In re MARY HARPLEY BUILDER, INC., Debtor.

Bankruptcy No. 584-804.

United States Bankruptcy Court, N.D. Ohio.

Nov. 8, 1984.

Joseph Hutchinson, Akron, Ohio, for Falls Sav.

Harold Corzin, Akron, Ohio, for debtor in possession.

James Becker, Akron, Ohio, for First Nat. Bank of Akron.

## FINDING AS TO RELIEF FROM STAY

H.F. WHITE, Bankruptcy Judge.

The debtor, Mary Harpley Builder, Inc., filed a voluntary petition under Chapter 11 of the Bankruptcy Code on July 18, 1984. Two days later Falls Savings & Loan Association of Cuyahoga Falls, Ohio ("Falls Savings") filed a motion requesting relief from stay, or in the alternative, adequate protection.

By agreement of the parties, an order was entered on August 16, 1984 granting Falls Savings additional security interests as a form of adequate protection. This order recited that Falls Savings had waived its right to a hearing within thirty days of the filing of its motion and further provided that a final hearing on Falls Savings' motion for relief from stay would be held on October 18, 1984.

Said hearing having been duly held and the court, having considered the testimony and evidence adduced therein and being fully advised in the premises, now makes its Finding of Fact and Law.

## FINDING OF FACT AND LAW

1. Falls Savings has a first mortgage on the following described parcels of property which are owned by the debtor and located in the City of Akron: 260 Delaware Place; 283 Delaware Place; and the unimproved lots numbered 15, 16, 17, 18, 19, and 20 of the Delaware Place subdivision. The uncontroverted evidence of the total value of the above-described parcels of real property is approximately $482,000.00. These properties are also subject to mechanics' liens and judgment liens in an approximate amount of $26,000.00. There is a question whether all or some of these liens have priority over Falls Savings' mortgage.

2. Falls Savings holds a lien on the property located at 1690 West Exchange Street, Akron, Ohio, at which property the debtor has its office. The fair market value of this property is approximately $265,-000.00. This property is subject to a first mortgage lien in favor of the First National Bank of Akron in the approximate amount of $209,000.00. After deducting for taxes, commissions, and costs, this property provides no more than $26,000.00 worth of security to Falls Savings.

3. Falls Savings also is secured by all of the debtor's personal and intangible property as well as a trailer. The trailer is valued at $2,000.00. There was no evidence of the value of the debtor's other personal property.

4. Falls Savings also holds a mortgage on a condominium unit located at 924 Memorial Parkway, Akron, Ohio. This condominium is not property of the estate or of the debtor but is owned by Mary Harpley and Wilson Harpley, Jr. This property has a fair market value of approximately $55,-000.00 and is subject to a judgment lien in favor of the Centran Bank of Akron in the approximate amount of $20,000.00. Centran Bank's judgment lien has priority over Falls Savings' mortgage. After deducting reasonable closing costs, Falls Savings' security interest in this property is approximately $31,000.00.

5. The total approximate value of all the property owned by the debtor, plus the condominium located at 924 Memorial Parkway owned by Mary Harpley and Wilson Harpley, Jr., is approximately $790,000.00. The total amount of claims against this property held by the creditors is approximately $922,000.00.

6. The debtor's total indebtedness to Falls Savings is approximately $665,000.00 with interest accruing at approximately $8,000.00 per month. Assuming that Falls Savings' mortgage on the Delaware Place properties has priority over the other liens, then Falls Savings holds a secured claim against the debtor in an approximate amount of no more than $541,000.00 and an unsecured claim of approximately $124,-000.00.

7. The debtor is in the business of real estate development. It contracts for the construction of single-family dwellings and

condominiums. It is not engaged in any construction projects at the present time. Its only income is derived from rentals from tenants of the 1690 West Exchange Street property. All of the rental income is used to make payments to the First National Bank of Akron, the first mortgagee of said property. Thus, the debtor has no disposable monthly income.

8. The debtor has filed a disclosure statement and summary of plan. In this statement the debtor indicates that it has entered into an agreement to sell the property located at 283 Delaware Place. Debtor indicates that the closing is anticipated within thirty days. The debtor also states that Dr. William F. Starn and his wife, Virginia Starn, have agreed to purchase the property located at 260 Delaware Place. The court finds, however, that the Starns have not entered into any written agreement with the debtor concerning this property and that the Starns have not obtained a mortgage commitment to finance the purchase of this property.

9. The debtor also indicates in its disclosure statement that it plans to sell the six unimproved lots at Delaware Place to a group of three homeowners in the Delaware Place subdivision for the total sum of $180,000.00. The debtor further indicates that it has received a commitment from Cardinal Federal Savings Bank to provide construction loans to the purchasers of the lots for the construction of new units on these lots. After the units are constructed, the investors, allegedly, will re-deed the lots back to the debtor for ultimate sale to the public. The debtor projects a total profit of $104,000.00 from this scheme to develop the lots.

10. The court finds that at the present time the debtor's plan to develop the six unimproved lots is purely speculative. One of the group of so-called investors testified that he has not spoken with the other so-called investors, has not arranged for an appraisal of the lots, has not agreed to a price, and in short has no definite plans concerning the lots. At best, he is considering the development of the lots, but there is no indication that the development will actually take place. Joseph J. Burgoon, a vice-president of Cardinal Federal Savings Bank, testified that although there had been some discussion with the debtor concerning a construction loan for the development of the lots, no agreement had been reached.

11. Dr. William F. Starn and his wife, Virginia Starn, did execute a guaranty whereby the Starns are guarantors on the debtor's debt to Falls Savings. Said guaranty contains the following language:

2. *Limit on Guaranty.* The undersigned Guarantors' liability under this Guaranty shall not exceed the sum of Three Hundred Twenty Thousand Dollars ($320,000.00) in total. The amount of the limitation on the undersigned Guarantors' liability hereunder shall be reduced upon the sale of any of the parcels by am (sic) amount equivalent to one-third (⅓) of the release price received by Falls Savings and Loan Association in accordance with its agreement with Borrower as to the individual release of one or more of the parcels described in said mortgage. The sale above referred to is a sale by the Borrower, and the term 'sale' shall not include a foreclosure sale and the funds received thereby.

The Starns' guarantees are not secured by any collateral. There was no evidence of the personal wealth of the Starns.

12. Prior to the commencement of this bankruptcy case, Falls Savings instituted a foreclosure action against the debtor, the Starns, and other parties in the Common Pleas Court for Summit County, Ohio, Case No. CV 84 4 1210. In said action the Starns have raised an issue about the construction of the language in the guaranty which is quoted in the immediately preceding Finding of Fact. The Starns have also claimed that they were induced to sign the guaranty as a result of fraud and misrepresentation and they have counterclaimed against Falls Savings for a total of $450,-000.00 in compensatory and punitive damages. The Starns have also filed a cross-

claim against the debtor in the state court foreclosure action.

13. If the court lifts the stay and permits Falls Savings to proceed with its foreclosure action, the debtor would probably lose all of its assets and cease doing business.

### LAW

Relief from the automatic stay may be had pursuant to 11 U.S.C. § 362(d) which provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property, if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

Counsel for the debtor has admitted, and the court now concludes from the Finding of Fact, that the debtor does not have any equity in the property in which Falls Savings claims a security interest. It can also be contended that the debtor's property is "not necessary to an effective reorganization". The debtor's disclosure statement reveals that most, if not all, of the property subject to Falls Savings' mortgage might be liquidated. The debtor argues, however, that its plan contemplates development as well as controlled and orderly liquidation. Thus, it argues, Falls Savings is not entitled to relief from stay under section 362(d)(2).

The debtor has the burden of showing that, under 11 U.S.C. section 362(d)(2)(B), the property is "necessary to an effective reorganization". The fact that the property is indispensable to the debtor's plan is an insufficient reason to deny the creditor's request for adequate protec-

tion or relief from stay. The court must find that "there is a reasonable possibility of a successful reorganization within a reasonable time" *In re Terra Mar Associates,* 3 B.R. 462, 466, 6 BCD 150, 152 (Bkrtcy. Conn.1980). Therefore, the fact that the property is indispensable to a reorganization will not prevent this court from granting relief from the automatic stay.

This court has already found in Finding of Fact number 10 that the debtor's plan is "purely speculative". Bankruptcy Judge Robert L. Krechevsky in *In re Terra Mar Associates, supra,* 3 B.R. at 466, 6 BCD at 153, held:

> The debtors claim that it is inherent in any chapter 11 proceeding, where the debtor's main asset consists of real estate and its business is the operation of that particular real estate, that the loss of the real estate thwarts any chance of a successful reorganization, and, therefore, the property is indispensable to the rehabilitation of the debtor. 'Indispensability of the property to the debtor's survival and hope of rehabilitation is not enough, of course, to justify continuation of the stay when rehabilitation is hopeless or the stay threatens injury to the lienor's security.' Kennedy, *The Automatic Stay in Bankruptcy,* 11 U.Mich. L.J.Ref. 179, 244 (1978).

See also *In re Shriver,* 33 B.R. 176, 11 BCD 93 (Bkrtcy.N.D.Ohio 1983) and *In re Faires,* 34 B.R. 549 (Bkrtcy.W.D.Wash. 1983).

In short, the fact that property may be indispensable is irrelevant, if the debtor has no prospects of an "effective reorganization". The debtor's disclosure statement falls far short of an outline for an effective reorganization. Indeed, it supports Falls Savings' position that the property is not necessary to an effective reorganization.

The court also finds that the debtor has failed to provide Falls Savings with adequate protection. "Adequate protection" is not defined in the Bankruptcy Code. Section 361 of the Bankruptcy Code lists three non-exclusive examples of adequate protection to illustrate what is meant by the

concept. The text of section 361 is as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

First, it should be noted that although the debtor has filed a disclosure statement it has not filed an actual plan of reorganization. The disclosure statement is so speculative that no plan of reorganization could be based on it. The disclosure statement contemplates the orderly liquidation of the debtor's improved properties and discusses a speculative project for the development of the unimproved properties.

The sale of the improved lots would provide Falls Savings with a return of at least some of its collateral. Only one of the improved properties, apparently, will be sold in the near future. The discussed sale to the Starns is at this point only speculative; there is no written agreement. Moreover, Dr. Starn is involved in a legal dispute with Falls Savings which might well consume his resources, time, and energy so

as to preclude him from purchasing the 260 Delaware Place property.

The disclosure statement is based on vague timetables. There is no indication when or if Falls Savings can expect to recoup its investment. It merely expresses the hopes of the debtor. It does not affect in any way the debtor's obligation to provide Falls Savings with adequate protection.

The evidence is clear that the debtor cannot provide adequate protection as suggested under section 361(1) and (2). The debtor has no available income with which to make cash payments and all of its property is already subject to liens, the value of which is in excess of the value of the property.

The debtor argues that the guarantee of the Starns does provide adequate protection to Falls Savings. The legislative history suggests that such a guarantee might qualify as adequate protection. House Report No. 95–595 95th Cong., 1st Sess. 340 (1977), U.S. Code Cong. & Admin.News 1978, p. 5787. Some courts have found that where a guarantee is secured by collateral it may qualify as the indubitable equivalent of adequate protection of a creditor's interest in property. *In re Greenwood Bldg. Supply, Inc.*, 23 B.R. 720, 9 BCD 907 (Bkrtcy.W.D.Mo.1982); *In re Earth Lite, Inc.*, 9 B.R. 440 (Bkrtcy.M.D.Fla.1981). Where the guarantee is not backed by collateral, however, courts have generally found that it does not provide adequate protection. *In re C.F. Simonin's Sons, Inc.*, 28 B.R. 707, 10 BCD 343 (Bkrtcy.E.D.N.C.1983); *In re Kenny Kar Leasing, Inc.*, 5 B.R. 304, 6 BCD 677 (Bkrtcy.C.D.Cal.1980).

In the present case, the Starns' guarantees are unsecured. There was no evidence of their assets and liabilities. Furthermore, the Starns are contesting the validity of the guarantees in state court. Based on these facts, the court must find that the guarantees of the Starns do not provide Falls Savings with adequate protection.

In *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir.1984), the Ninth

Circuit held that where the automatic stay prevents a creditor from repossessing its collateral, it is entitled, under the concept of adequate protection, to compensation for this delay in enforcing its rights. This compensation is usually provided by monthly payments equal to the interest on the liquidation value of the collateral. Other courts have also found that a creditor is entitled to compensation for the loss of use of its money under the concept of adequate protection. *In re Langely*, 30 B.R. 595 (Bkrtcy.N.D.Ind.1983); *In re Monroe Park*, 17 B.R. 934 (D.C.Del.1982); *In re Virginia Foundry*, 9 B.R. 493 (W.D.Va. 1981).

The court in *In re American Mariner Industries, Inc., supra*, recognized that not all courts have followed the above view of adequate protection. Some courts, including one in this district, have held that a creditor's right to adequate protection entitles the creditor only to protection of the value of the collateral itself. *See e.g. In re Shriver, supra; In re South Village, Inc.*, 25 B.R. 987, 9 BCD 1332 (Bkrtcy. Utah 1982); *In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 8 BCD 1402 (Bkrtcy.S.D. N.Y.1982); *In re Alyucan Interstate Corp.*, 12 B.R. 803, 7 BCD 1123 (Bkrtcy. Utah 1981). While recognizing that adequate protection is a flexible concept to be construed and applied on a case by case basis, this court concludes that *In re American Mariner Industries, Inc., supra*, expresses the better view. This court does not state that monthly interest payments will always be required. Other forms of adequate protection might be found in particular cases which will compensate a creditor for the loss of use of its money.

■ In the present case, no protection whatsoever has been offered to Falls Savings. Indeed, as unpaid taxes and interest on the judgment liens and mechanics' liens continue to accrue on the real estate, even the present value of Falls Savings collateral is not adequately protected. Furthermore, it appears that the debtor is not in the position to offer Falls Savings any adequate protection.

Therefore, taking all these factors into consideration, this court concludes that Falls Savings is entitled to relief from stay as requested.