In re BEAR CREEK MINISTORAGE, INC. and Loch Katrine Center, Inc., Debtors,

REPUBLIC BANK HOUSTON, N.A., Movant,

v.

BEAR CREEK MINISTORAGE, INC. and Loch Katrine Center, Inc., Respondents,

In re TIMBERS OF INWOOD FOREST ASSOCIATES, LTD., Debtor,

UNITED SAVINGS ASSOCIATION OF TEXAS, Movant,

v.

TIMBERS OF INWOOD FOREST ASSOCIATES, LTD., Respondent.

Bankruptcy Nos. 84–06388–H3–5, 84–06389–H2–5 and 85–01453–H3–5.

United States Bankruptcy Court, S.D. Texas, Houston Division.

May 7, 1985.

Robert Collins, Houston, Tex., for Bear Creek Ministorage and Loch Katrine.

James Babcock, Houston, Tex., for RepublicBank Houston, N.A.

Leonard H. Simon, Houston, Tex., for Timbers of Inwood Forest.

H. Miles Cohn, Houston, Tex., for United Savings Ass'n of Texas.

## MEMORANDUM OPINION

WESLEY W. STEEN, Bankruptcy Judge.

These three cases present the same legal issue. They were heard separately on April 17, 1985. This opinion assigns the reasons for the separate orders for adequate protection entered in each case. A preliminary draft of this opinion was pro-

vided counsel on April 19; this opinion is an editorial revision not possible on April 19 because of time constraints.

## I. Similar Facts

The facts in each case are very similar. Each Debtor owns real estate that secures an indebtedness; when each case was filed, the sum due on the indebtedness exceeded the value of the security. Each secured Creditor filed a motion for relief from the § 362 stay. The value of the collateral is stable, *perhaps* slightly (but *very* slightly) appreciating. There was no evidence that the value of the collateral was depreciating.

## II. The Law of Adequate Protection

Section 362(d) *requires* the Court to grant relief from the automatic stay effected by § 362(a) for cause, including the lack of adequate protection. Section 361 provides that adequate protection can consist of cash payment(s), additional and replacement liens, or "other relief ... as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property."

There is no doubt that the Creditors' pre-petition liens are protected during the course of these proceedings. The Creditors assert, however, that they have another interest that should be protected: that is the right to foreclose and to reinvest (or relend) the foreclosure proceeds. Because the value of the collateral does not exceed the indebtedness, each day that the case

proceeds the Creditors allegedly are losing a sum of money.[1] The asserted lost value is the "time use value" of the proceeds that the Creditors would receive if they were allowed to foreclose. The Creditors seek adequate protection of that interest in the security.

▪ The issue of entitlement to protection of the value of the right to reinvest foreclosure proceeds has been squarely considered and decided: *In re American Mariner Industries, Inc.*, 734 F.2d 426 (9th Cir., 1984). In that case the Ninth Circuit interpreted the applicable parts of the Bankruptcy Code as follows: (i) the interest entitled to protection under §§ 361 and 362(d) is "the secured creditor's interest and not merely the value of the collateral";[2] (ii) when the creditor is deprived of the specifically agreed benefit of its bargain,[3] the statute requires as a *quid pro quo* that the "value" of its bargain must be adequately protected; (iii) the test of adequate protection is twofold: first, the protection must adequately safeguard principal, and second, the protection must "... effectively ... compensate the secured creditor for loss of value";[4] this latter element requires a calculation of the present value of the secured creditor's interest; and (iv) Congress intended in the Bankruptcy Code to increase the protection provided to creditors against potential injury from the interim stay against collection efforts;[5] therefore, the cases "... decided

1. If the value of the collateral sufficiently exceeded the indebtedness that it secures, the same issue would be presented, *i.e.,* whether the foreclosure/reinvestment right is adequately protected, but the inquiry might be different; the Court would determine whether the creditor's right was adequately protected by the "equity cushion."

2. 734 F.2d 426, 430.

3. In this case, its right to foreclose on the property and to reinvest the proceeds.

4. 734 F.2d 426, 432.

5. This objective of increased creditor protection was discerned by the Ninth Circuit as demonstrated by enactment of the following parts of the statute: (1) automatic termination of the

stay in 30 days unless the Court orders otherwise; (2) potential *ex parte* relief under § 362(f); (3) burden of proof on debtor to provide adequate protection; (4) expansion of "indubitable equivalent" test to temporary stay protection; (in its original application, Judge Hand limited the requirement to plan confirmation and intimated that lesser protection would suffice for temporary stays; the Ninth Circuit found that Congress' extension of this protection language to temporary stays evidences a Congressional intent to expand creditor rights to include protection of the time use value of money.) The Ninth Circuit also found evidence of this Congressional intent in the legislative history, particularly that cited in footnote 6 and in the text of the opinion at page 431.

before enactment of the Bankruptcy Reform Act of 1978, are of little relevance in construing sections 361 and 362".[6]

In short, the Ninth Circuit concluded that the secured creditor's right to foreclose on the collateral and to reinvest the proceeds "... has substantial, measurable value ..."[7] that is entitled to protection. The *American Mariner* analysis is clearly correct. In addition to being a sensible interpretation of the statute, the decision achieves a rational financial result. For example, if the value of collateral is a stable $500,000 and interest is 10%, a one year stay of foreclosure enforcement costs the creditor $50,000. The Ninth Circuit held that this right is entitled to protection.[8]

Having determined that the creditor's interest is entitled to protection, the Court must then decide what protection will suffice; § 361 is the determinant. The debtor must provide cash payment(s), substitute lien(s), or other "indubitable equivalent[s]." The only protection that the Debtors can supply in these cases is cash payments because they have no other property or method with which to provide substitute liens or indubitable equivalents.

■ The next question, then, is the amount of those payments. Unfortunately, *American Mariner* does not provide a formula. Because the statute protects the creditor's right to investment return on foreclosure proceeds, the protective payments should be a function of the price that could be realized on foreclosure times the rate of return the creditor could expect on reinvestment of the foreclosure proceeds. Thus the Court must determine the amount that would be realized on foreclosure, the rate of return on the proceeds, and the date when foreclosure would occur and investment return would begin. Obviously, none

of these facts is susceptible of determination with mathematical precision.

The amount realized on foreclosure is difficult to determine both because it is difficult to determine the market in which the property will sell and because the evidence of prices available in each market consists of estimates and appraisals. Should the Court use the price that the property would bring at an auction or should the Court also consider the secured creditor's right to "buy in" the property at foreclosure and ultimately to realize a greater benefit through prudent delayed marketing of the property utilizing a more efficient market plan? In most cases, the former would bring a lesser price more quickly while the latter would bring a greater price somewhat later. The evidence in different cases might result in different determinations of what plan a prudent creditor might adopt.

The *ratio decidendi* of *American Mariner* is that the creditor has a right to protection of the present value of its right to foreclose and to reinvest the sale proceeds. To compute that present value, this Court assumes that the creditor would act as a prudent businessman and would follow reasonable, established marketing techniques, including purchasing the security itself at foreclosure in partial or full satisfaction of the indebtedness, followed by a reasonable and prudent effort to market the property. Since the creditor's right to foreclose would give it no financial benefit until the final sale to a third party of the property acquired at foreclosure, the payments by the debtor need not begin until that date in order to preserve the present value of the creditor's right to foreclose and to reinvest the proceeds. That is a serendipitous result for the debtor: the earlier that payments must begin, normally

---

6. 734 F.2d 426, 434.

7. 734 F.2d 426, 435.

8. There is only one other circuit court opinion on the subject. In *Grundy National Bank v. Tandem Mining Corporation,* 754 F.2d 1436 (4th Cir., 1985), the Fourth Circuit followed *American Mariner.* One Bankruptcy Judge has followed *American Mariner, In re Mary Harpley Builder, Inc.,* 44 B.R. 151, 155–156 (Bkrtcy.N.D. Ohio, 1984). One has refused to apply its "Draconian Logic", *In re Keller,* 45 B.R. 469, 473 (Bkrtcy.N.D.Iowa, 1984).

the smaller they will be.[9] In the cases at bar, the evidence indicated that a prudent creditor would itself purchase the property at foreclosure and would then market the property in the organized real estate market.

The applicable interest rate is difficult to determine because interest rates are normally a function both of the risk and of the term of the debt. Because *American Mariner* requires protection of the present value of the creditor's right to reinvest foreclosure proceeds, it would appear that the correct interest rate to apply is the rate that would be realized by the creditor when the proceeds are reinvested; in the cases at bar, that would be the creditor's lending rate. Because interest rates vary, the applicable rate would be the prevailing rate at the time that the creditor could expect to receive the foreclosure proceeds for reinvestment. Absent contrary evidence, the Court will assume stable interest rates in the cases at bar.

Finally, the Court must establish the applicable hypothetical foreclosure date and reinvestment date in order to compute the date for valuation of the property and for determination of the interest rate; that date, of course, would also be the date on which payments must begin.[10] Returning to *American Mariner*, the objective is to compensate for the denial of the right to foreclose; absent unusual circumstances, that denial arises upon entry of the order for relief, which is coincident with the filing of the case. The applicable date for valuation of the property and for estimation of the interest rate would be computed by adding the foreclosure delays to the date that the bankruptcy petition was filed.[11] The date thus computed would be

**9.** This logic has at least one flaw. *American Mariner* dictates that "the usual time and expense involved in repossession and sale of collateral be considered." (footnote 12). But how? The instant opinion concludes that one must estimate the foreclosure delays, add that time to the bankruptcy filing date, and thus determine when adequate protection payments begin. But this is inadequate protection if the debtor does not successfully reorganize. Why? Because, although the stay will be lifted if the debtor fails to make an adequate protection payment, the foreclosure delays will have run twice without payment. The creditor will have lost investment return once during the *American Mariner* footnote 12 delays and once during actual foreclosure. The only solution is to require adequate protection payments from the date of filing. But this is contrary to footnote 12 of *American Mariner*. While the *American Mariner* solution is flawed, it is reasonable. Beginning adequate protection payments on filing would be impossible because of the delays required to litigate the amount and method of providing adequate protection. In addition, this solution, though flawed, recognizes and supports the Congressional objective to promote reorganization; if the reorganization is successful, the delays will have run only once, *e.g.,* the footnote 12 delays before adequate protection begins.

**10.** Technically, the creditor's return would not begin until *after* the foreclosure. For example, if the foreclosure proceeds were collected at the end of the sixth month, then the creditor would begin to earn an investment return during the seventh month, after the foreclosure proceeds were invested. However, to *protect* earnings

*during* the seventh month, this opinion requires payments to begin at the end of the sixth.

**11.** 734 F.2d 426, 435 text and footnote 12. *Grundy, id.* states that it adopts the *American Mariner* holding, but then states that "interest should not begin" until the filing of a motion for relief from the stay, but "[e]ven then the timing of interest should be postponed to take account of the time that would be subsumed in repossession and sale of the collateral" 754 F.2d 1436, 1441. If the *Grundy* court means that all computations start from the date of filing of the § 362(d) motion for relief, then the conclusion does not seem to be supported by logic or by *American Mariner*. The protection should be determined by the date on which that right to foreclose was impinged, not determined by when the protection was requested. *American Mariner* says that calculations are made from the date of the *petition*. *Grundy* might have construed that language to mean the date that the creditor "petitions for relief from the automatic stay." *See* 754 F.2d 1436, 1441. But the proper pleading for relief from the stay is a motion. The "petition" referred to in *American Mariner* is more likely the petition for relief filed by the debtor. If *Grundy* means that adequate protection *payments* may not begin until after a motion for § 362(d) relief is filed even though the applicable delays are calculated from the date of the petition, then the result is reasonable; that limitation would prevent hardship to the Debtor caused by a "late" § 362(d) motion that could require sizeable "make-up" payments for which the Debtor had not planned. It is not unreasonable to require the

the first date on which the creditor could expect a return on its interest in the property. Payments should begin on the same date. The evidence in the case at bar indicated the foreclosure period to be six months. The evidence in the cases at bar did not indicate any substantial changes in the prices or interest rates during the periods involved.

### III. Summary and Application to Case at Bar

■ In summary, the evidence in the cases at bar is that the Creditors' bargains were altered by the bankruptcy law on the date that the petitions in bankruptcy were filed. The Debtors must provide the Creditors with adequate protection for the Creditors' interests in the property by one of the methods specified in § 361. To compute the present value of the impingement, one computes the expected foreclosure proceeds and the interest return that the Creditors would receive if they had been able to exercise their rights to foreclose. To do so, one adds the prudent foreclosure marketing delay to the date of filing and assumes receipt of the value of the collateral and reinvestment of the collateral as of the end of the prudent foreclosure marketing period at a rate of return to be expected from the Creditors' business practices. When, as in the cases at bar, the Debtor can offer no alternative adequate protection, the § 362 stays can remain in force only so long as cash payments are made to the Creditors in the sums thus computed.

■ Appendices A and B of this opinion contain the Court's findings in the cases at bar of foreclosure sale proceeds and comparable rates of return that the Creditors would realize if foreclosure proceeds were reinvested. Those attachments also show the computation of monthly payments necessary to protect the present value of the secured Creditors' delayed rights to foreclose. Separate orders have been entered in each case, requiring monthly adequate protection payments computed by using the expected foreclosure proceeds and a 12% annual rate of interest (1% per month). The interest rate is established by testimony that the Creditors would receive approximately that return from reinvestment of foreclosure proceeds.

### IV. Analysis of Argument by Counsel

■ Counsel for one of the Debtors stated that this holding means that the debtor must fund adequate protection either through net operating revenues or through capital contributions; he said that such a requirement reduces (and potentially eliminates) the Debtor's ability to reorganize. That comment is well founded in the cases at bar. The result is inescapable, however, since that is the only way in these cases to protect the creditor's statutory and potential constitutional rights [12] in the collateral. The result is not as unfair as counsel suggests, however. If the Debtors cannot even fund the present value of foreclosure rights in the collateral, they have little equitable laim to a right to reorganize. Because time runs inexorably, and because money has a time use value, *someone will fund* the time use value of an undersecured debt if the stay remains in force. No statute or court decision can alter that financial fact. The question is *who* will fund it: debtor or creditor. Continuation of the stay without creditor compensation requires the creditor to fund the stay; there is no statutory authority for such a result. To the contrary, the Ninth Circuit correctly concludes, the statute requires protection of the creditor's interest.

The second argument urged by counsel is that the allowance of "interest payments" would be inconsistent with other sections of the Bankruptcy Code, specifically

---

creditor to be vigilant in requesting protection if it wants protection. That issue of when payments start is not affected in the case at bar by the date that the motion for relief was filed because it was filed prior to the earliest date when adequate protection payments would be-

gin, either under *American Mariner* or under *Grundy* (as interpreted herein).

**12.** The *American Mariner* court did not reach the constitutional issue because it found statutory protection for the creditor's interest.

§ 502(b) that disallows interest on the claim of an unsecured creditor. This argument is not well founded. This decision only allows protection for the interests of a secured creditor. To the extent that a creditor has a claim in excess of the value of the collateral, no protection is available under this decision. Only the secured portion of the claim is entitled to protection.

## V. Use of Cash Collateral

■ In Case Number 85–01453, *Timbers of Inwood Forest Associates,* 49 B.R. 454 (Bkrtcy.S.D.Tex., 1985) the Creditor holds an assignment of rents as additional security for the loan. There currently exists an agreed order for use of cash collateral under the terms of which the debtor is allowed to pay the operating expenses of the apartment complex from the cash collateral and is directed to pay the remainder of the cash collateral to the secured creditor. The Debtor argues that if adequate protection is awarded for the Creditor's interest in the real estate under the *American Mariner* doctrine, then such adequate protection is in lieu of security for the use of cash collateral and, therefore, the agreed cash collateral order should be revoked. The consequence of such a rule would be that the Debtor could keep and could use the excess cash collateral as it pleases if the *American Mariner* adequate protection payments are less than the net operating revenue.

The Debtor's argument is not well founded; it misreads the Bankruptcy Code and *American Mariner.* The creditor in the case at bar has one debt due, but it has two interests in property as security for that debt: *viz,* a deed of trust and an assignment of rents. The Code, as interpreted by *American Mariner* and by this Court, entitles the creditor to protection of its interest in the security; thus the *American Mariner* payments do not protect the indebtedness due to the creditor; the payments protect the creditor's interest in the security, including the foreclosure interest in the security. The assignment of rents, cash collateral, is additional security for the indebtedness.

The debtor can deprive the creditor of the creditor's interest in the rents (cash collateral) only if the debt is less than the total security (and thus if the creditor is oversecured and, therefore, adequately protected). That is not the situation in the case at bar. But what, as in the case at bar, if the value of the cash collateral plus the value of the real property collateral is less than the indebtedness. Does the creditor have a right to protect its interest in the cash collateral (assignment of rents) and to receive periodic *American Mariner* payments in addition? That issue need not be decided at this time. It was not raised in the pleadings or at the hearing of this case. Therefore, the Court has not considered the question.

## APPENDIX A

Timbers of Inwood Forest Associates
Case No. 85–01453–H3–5

| | | |
|---|---|---|
| Indebtedness as of April 12, 1985 | | $4,366,388.77 |
| Monthly accruals: | | |
| Interest | $45,842.06 | |
| Taxes & insurance escrow | 7,956.00 | |
| **Total** | | **$53,798.06** |
| Amount realizable on foreclosure | | $4,250,000.00 |
| Time to realize foreclosure proceeds | | 6 months |
| Appropriate interest rate | | 12% |
| Date of filing | | March 4, 1985 |

<u>Monthly Payments Required</u>

| | | |
|---|---|---|
| 6 months from date of filing | | September 4, 1985 |
| Monthly payments due from 5/4/85–8/4/85 | | $7,956 |

Monthly payments beginning 9/4/85:

| | | |
|---|---|---|
| Adequate protection of foreclosure rights | $42,500 | |
| Taxes & insurance escrow | 7,956 | |
| **Total** | | **$50,456** |

In addition, Debtor shall make payments each month sufficient to amortize any deficiency in the escrow account between the date of this order and the date payments are required to be made from the escrow account.

## APPENDIX B

Bear Creek Mini-Storage, Inc.
Case No. 84–06388–H3–5
Loch Katrine Center, Inc.
Case No. 84–06389–H2–5

| | |
|---|---|
| Indebtedness as of April 17, 1985 | $3,067,660.40 |
| Monthly interest accrual | $ 26,961.90 |
| Amount realizable on foreclosure | $2,575,000.00 |
| Time to realize foreclosure proceeds | 6 months |
| Appropriate interest rate | 12% |
| Date of filing | December 13, 1984 |

<u>Monthly Payments Required</u>

| | |
|---|---|
| 6 months from date of filing | June 30, 1985 |
| Monthly payments due beginning June 30, 1985 | $25,750 |

There was no evidence presented at hearing concerning escrows for insurance and taxes.