In re PEACH STATE DISTRIBUTING COMPANY, Debtor.

UNITED STATES of America, Movant,

v.

PEACH STATE DISTRIBUTING COMPANY, Respondent.

Bankruptcy No. A85–00644–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 20, 1986.

Joel B. Piassick, Deborah B. Zink, Smith, Gambrell & Russell, Atlanta, Ga., for Peach State Distributing Company.

Myles E. Eastwood, Asst. U.S. Atty., Atlanta, Ga., for United States of America on behalf of its agency, the Small Business Adm.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

The debtor in possession, Peach State Distributing Company ("Peach State"), filed a motion to alter or amend the Court's Order entered on October 16, 1985 directing Peach State to make adequate protection payments to the Small Business Administration ("SBA"). The Court held a hearing on this motion on December 5, 1985, at which time the matter was taken under advisement.

In the Order entered on October 16, 1985, the Court directed Peach State to provide adequate protection to the SBA's secured claim by paying to the SBA $40,-500.00 by December 1, 1985, and $4,500.00 each month beginning in November, 1985. The $40,500.00 figure represents payments of $4,500.00 for each of the nine (9) months up to and including October, 1985. In the Order the Court expressly deferred ruling on the amount of adequate protection required to compensate the SBA for the depreciation of its collateral. The Order further provides that it is subject to any changes that may be made at the confirmation hearing scheduled on October 21, 1985.

On November 1, 1985, the Order confirming Peach State's plan of reorganization

was entered. The Order of confirmation states that the SBA is to receive interest payments on its claim at the rate of 11.75%, and that Peach State is to deposit $40,-500.00 into an escrow account pending the disposition of the motion filed by Peach State that is presently under consideration. Because the plan was confirmed on November 1, 1985, the Court will only consider the extent to which the SBA is entitled to adequate protection between the filing of Peach State's petition for relief under Chapter 11 of the Bankruptcy Code on February 5, 1985 and the confirmation of Peach State's plan on November 1, 1985.

The stipulated value of the SBA's collateral on February 5, 1985 is $550,000.00. According to testimony given by Mr. Gibeau, a loan officer of the SBA, Peach State had advised the SBA that its collateral was depreciating at the rate of $4,000.00 per month. Peach State did not deny that it had suggested the $4,000.00 figure. Instead, it asserts that the issue is not before the Court, because the Order of October 16, 1985 expressly deferred ruling on the issue of depreciation. In view of the fact that Peach State apparently suggested the $4,000.00 figure and that in Mr. Gibeau's opinion that figure is "possibly somewhat low," Transcript of Hearing held on December 5, 1985, at 35, the Court finds no injustice in ruling at this time that the collateral was depreciating at a rate of $4,000.00 per month during 1985.

Further testimony given by Mr. Gibeau shows that the SBA would apply an annual interest rate of 11.75% in lending its funds. Applying this figure to the stipulated value of the collateral, $550,000.00, yields a monthly amount of $5,385.42. The SBA points out that the $4,500.00 figure used in the Court's previous Order was an approximation suggested by Peach State based on an arbitrary annual rate of 10%. Accordingly, the Court finds that $5,385.42 is the monthly opportunity cost incurred by the SBA while it is deprived of the use of $550,000.00.

The parties vigorously dispute the time period over which the SBA is entitled to recover opportunity costs as adequate protection. A prominent consideration in this determination is the amount of time that would be necessary for the SBA to liquidate its collateral. Mr. Gibeau testified that it would take three to four months to liquidate the collateral securing the SBA's claim. Mr. Head, an officer, director and shareholder of Peach State, testified that for a number of reasons the liquidation of the SBA's collateral would take between eight months and two years. In view of the reasons mentioned by Mr. Head, the Court finds that a liquidation of the collateral would take approximately six months.

What constitutes adequate protection is a question of fact to be determined by the bankruptcy judge subject to the clearly erroneous standard of review. *Chrysler Credit Corp. v. Ruggiere (In re George Ruggiere Chrysler-Plymouth, Inc.)*, 727 F.2d 1017, 1019 (11th Cir.1984). This principle applies to the determination of whether adequate protection should include interest on a secured creditor's claim. *Lend Lease v. Briggs Transportation Co. (In re Briggs Transportation Co.)*, 780 F.2d 1339, 1349 (8th Cir.1985). Among the factors relevant to this determination is the probability of the success of the debtor's reorganization. *Id.* In a bankruptcy case with a high probability of success, it would be appropriate to let the secured creditor await distribution in accordance with the going concern value of his property. *See In re Penny*, 52 B.R. 816, 821 (Bankr.E.D. N.C.1985). When there is a lower probability of success and correlatively higher probability that the value of the creditor's collateral will be realized through liquidation, the Court should be more inclined to include in adequate protection the opportunity costs incurred by a secured creditor. *See In re Independence Village, Inc.*, 52 B.R. 715, 731 (Bankr.E.D.Mich.1985).

At the hearing, it was brought to the Court's attention that following the confirmation of Peach State's plan on November 1, 1985, Peach State, a distributorship, suffered a setback in that its number one manufacturer decided to split Peach

State's territory with a competitor. Based on this and other considerations, the Court concludes that the SBA is entitled to receive adequate protection in the form of interest to compensate it for the opportunity cost of being deprived of the funds that would have been available to it but for the automatic stay.

■ The parties' dispute over when this interest should begin to accrue is caused by an apparent conflict between the interpretations of the case of *Crocker National Bank v. American Mariner Industries, Inc. (In American Mariner Industries, Inc.)*, 734 F.2d 426 (9th Cir.1984), set forth in *Grundy National Bank v. Tandem Mining Corp.*, 754 F.2d 1436 (4th Cir.1985), and *Republic Bank Houston, N.A. v. Bear Creek Ministorage, Inc. (In re Bear Creek Ministorage, Inc.)*, 49 B.R. 454 (Bankr.S. D.Tex.1985). To the extent that it can be said that the Courts in *Grundy* and *Bear Creek* interpret *American Mariner* to mean that undersecured creditors are always entitled as a matter of law to receive adequate protection in the form of post-petition interest, this Court disagrees with those cases. *See Grundy*, 754 F.2d at 1441; *Bear Creek*, 49 B.R. at 457. As stated above, the determination of what constitutes adequate protection is a question of fact "best left to the discretion of the bankruptcy judge." *Briggs Transportation*, 780 F.2d at 1349.

To the extent that the analyses in *Bear Creek* and *Grundy* are instructive with respect to the determination of when interest should begin to accrue, the Court will consider the opinions. The Court in *Bear Creek* stated that the applicable date "would be computed by adding the foreclosure delays to the date that the bankruptcy petition was filed." *Bear Creek*, 49 B.R. at 458. In contrast, the Court in *Grundy* stated that "[i]nterest should not begin any earlier than the time that the creditor petitions for relief from the automatic stay. Even then the timing of interest should be postponed to take account of the time that would be consumed in repos-

session and sale of the collateral." *Grundy*, 754 F.2d at 1441.

■ The most compelling reason for postponing the accrual of interest until the creditor files a motion for relief from the automatic stay is that "[i]t is not unreasonable to require the creditor to be vigilant in requesting protection if it wants protection." *Bear Creek*, 49 B.R. at 458 n. 11. Applying this rationale, the Court in *Bear Creek* reconciled its holding with the *Grundy* opinion as follows:

> If *Grundy* means that adequate protection *payments* may not begin until after a motion for § 362(d) relief is filed even though the applicable delays are calculated from the date of the petition, then the result is reasonable; that limitation would prevent hardship to the Debtor caused by a "late" § 362(d) motion that could require sizeable "make-up" payments for which the Debtor had not planned.

*Id.* This Court agrees that any perceived lack of vigilance on the part of the creditor does not justify postponing the accrual of interest beyond the date on which the creditor files its motion for relief from the automatic stay.

■ An example of a set of facts which justify postponing the accrual of interest is provided in *Independence Village, supra.* In that case, the Court found that the creditor had intentionally waited to file its motion for relief from the stay until the debtor's rights under 11 U.S.C. § 365 were terminated by the sixty-day time limit in § 365(d)(4). *Independence Village*, 52 B.R. at 731 n. 11. In the case presently under consideration, there is no evidence to indicate that the SBA delayed filing its motion for the purposes of prejudicing Peach State's rights.

Moreover, the Court refuses to find that the SBA neglected its own rights in waiting until September 17, 1985 to file its motion pursuant to 11 U.S.C. § 362(d). The SBA has diligently sought to protect its interests during the pendency of this case in a number of ways, including participation in the hearings on the confirmation of Peach

State's plan of reorganization. In light of the SBA's efforts, the Court will not postpone the accrual of interest to take into account the date of the filing of the SBA's motion.

Adding a six-month liquidation delay to the date on which Peach State filed its petition for relief under Chapter 11, the Court finds that the SBA should recover as adequate protection the opportunity costs of being deprived of the use of $550,000.00 between August 1, 1985 and November 1, 1985. Thus, adequate protection should include depreciation and opportunity costs in the following amounts:

### Adequate Protection

|                 | Depreciation | Interest | Total |
|-----------------|-------------|----------|-------|
| February, 1985  | $3,285.71[1] | $ –0–   | $3,285.71 |
| March, 1985     | 4,000.00    | –0–      | 4,000.00 |
| April, 1985     | 4,000.00    | –0–      | 4,000.00 |
| May, 1985       | 4,000.00    | –0–      | 4,000.00 |
| June, 1985      | 4,000.00    | –0–      | 4,000.00 |
| July, 1985      | 4,000.00    | –0–      | 4,000.00 |
| August, 1985    | 4,000.00    | 5,385.42[2] | 9,385.42 |
| September, 1985 | 4,000.00    | 5,385.42 | 9,385.42 |
| October, 1985   | 4,000.00    | 5,385.42 | 9,385.42 |
|                 |             |          | $51,441.97 |

Accordingly, it is ORDERED that: (1) the Order entered in this contested matter on October 16, 1985 is VACATED; and (2) Peach State shall pay $51,441.97 to the SBA as adequate protection to compensate it for depreciation and opportunity costs incurred prior to confirmation of Peach State's plan of reorganization on November 1, 1985. This amount shall be reduced to the extent that Peach State made payments to the SBA pursuant to the Order of October 16, 1985 to adequately protect the SBA's secured claim through November 1, 1985.

---

1. Since Peach State filed its petition for relief under Chapter 11 on February 5, 1985, depreciation for February is calculated for the remaining twenty-three (23) days in February. ($4,000.00 × 23 days/28 days).

2. The opportunity cost per month is calculated from the stipulated value of the SBA's secured claim of $550,000.00 and the annual interest rate at which the SBA would reinvest its funds, 11.75%, after hypothetical liquidation delays of six (6) months. ($550,000.00 × 11.75%/12 months).