HARRISON L. WINTER, Chief Judge:
 

 
 *1438
 
 In a Chapter 11 proceeding, the district court reviewed an order of the bankruptcy court entered upon the application of Grundy National Bank (Grundy), a secured creditor, for relief from the automatic stay provided in 11 U.S.C. § 362 to enable it to repossess and liquidate certain collateral on which it had valid liens. The district court affirmed the bankruptcy court’s refusal to vacate the stay and its order to require Tandem Mining Corporation (Tandem) to make periodic payments for Grundy’s protection,
 
 [1]
 
 but the district court reversed the bankruptcy court’s ruling that Tandem pay interest on its unpaid obligations to Grundy during the pendency of the Chapter 11 proceedings.
 

 Grundy appeals, and we affirm in part and reverse in part. We further order that the collateral be released unless Tandem produces an approved plan of reorganization within sixty days from the issuance of our mandate.
 

 I.
 

 Tandem, a deep coal mine contractor, obtained two two-year secured loans from Grundy in 1982 with interest at 20.21% and gave Grundy an uncontested security interest in,
 
 inter alia,
 
 a wheel loader and a battery charger. The parties do not dispute that the fair market value of the loader is $26,000 and that of the battery charger is $1,200. At the time of the hearing in the bankruptcy court, the unpaid principal balance on the loader was $25,-968.51 (excluding interest of $3,781.43). The battery charger was only partial security for an even larger debt.
 

 On November 4, 1982, Tandem filed a Chapter 11 petition and thereafter was adjudicated a debtor-in-possession. At the time of the proceedings in the bankruptcy court and the district court which give rise to this appeal — and, indeed, to the time of argument of this appeal — neither Tandem nor any creditor had proposed a plan of reorganization.
 

 Since both loans were in default, Grundy, on February 28, 1983, petitioned the bankruptcy court to lift the automatic stay so that it could foreclose on its collateral. The bankruptcy court denied this relief with respect to the loader and the battery charger. It found that the appraised value of the loader and the charger were equal to the unpaid balance of the loans with respect to each, that each had a remaining useful life of five years and that each was necessary for the reorganization of Tandem. Recognizing that a secured creditor is entitled to relief from the automatic stay if adequate protection of his property interests is not arranged, 11 U.S.C. § 362(d), the bankruptcy court concluded that adequate protection could be provided by requiring Tandem to make periodic payments to Grundy in the amount computed by dividing the current unpaid balances on the two items by their remaining useful life of sixty months with interest from the date of hearing at the rate of 9.5%.
 

 Grundy then appealed to the district court. It contended that it was entitled to relief from the automatic stay, that the bankruptcy court erred in extending the payment schedule for the loader and the charger for sixty months, and that the bankruptcy court should have allowed interest at the then-current market rate (16%) rather than the prime rate (9.5%). The district court modified the bankruptcy court’s order to provide that the periodic payments would continue only until a plan of reorganization is confirmed and that interest would not be allowed in the periodic payments. In all other respects, it affirmed the bankruptcy court’s' findings of fact and conclusions of law.
 

 Grundy then appealed to us, persisting in its contention that it is entitled to relief
 
 *1439
 
 from the automatic stay, and, if not, that it is entitled to interest on the periodic payments at the current market rate. Although it took no cross-appeal, Tandem contends that the bankruptcy court entered no final order and hence there was no jurisdiction for an appeal to the district court or to us. We consider these issues in inverse order.
 

 II.
 

 We see no merit in Tandem’s argument that both the district court and this court lack jurisdiction to entertain this appeal. Although entitled “Memorandum Opinion and Order” and signed by the bankruptcy judge, it is true that the concluding language of the document ordered counsel “to compute [the periodic] payments and tender forthwith an Order incorporating the provisions set out in this Memorandum Opinion” and that no formal order was ever presented or entered. But the memorandum opinion was precise in its terms and was self-executing, and we were told in oral argument that despite the absence of a formal order, Tandem has been making the periodic payments that the order would have required. We therefore cannot conclude that the absence of a formal order converted the bankruptcy court’s memorandum opinion into a non-appealable interlocutory ruling.
 

 We also reject the argument that since the district court “merely modified” the order of the bankruptcy court, there was no final order within the meaning of 28 U.S.C. § 1293 so as to give us appellate jurisdiction. The order of the district court did not require further proceedings in the bankruptcy court other than continuation of the bankruptcy proceedings, so we think it was final. Despite the contrary view expressed in 1 Collier on Bankruptcy ¶ 3.03[7][e] (15th ed. 1979), we are in agreement with our sister circuits that an order denying relief from the automatic stay is a final appealable order.
 
 See In re American Mariner Industries, Inc.,
 
 734 F.2d 426, 429 (9 Cir.1984);
 
 In re Leimer,
 
 724 F.2d 744 (8 Cir.1984);
 
 In re Comer,
 
 716 F.2d 168, 171-74 (3 Cir.1983);
 
 In re Regency Woods Apartments, Ltd.,
 
 686 F.2d 899, 902 (11 Cir.1982);
 
 In re Taddeo,
 
 685 F.2d 24, 26 n. 4 (2 Cir.1982).
 

 III.
 

 We next consider whether there was reversible error in the conclusion of the bankruptcy court and the district court not to lift the automatic stay.
 

 The statutory standards for terminating an automatic stay are contained in 11 U.S.C. § 362(d):
 

 On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay—
 

 (1) for cause, including lack of adequate protection of an interest in property of such party in interest; or
 

 (2) with respect to a stay of an act against property ..., if—
 

 (A) the debtor does not have an equity in such property; and
 

 (B) such property is not necessary to an effective reorganization.
 

 Section 362(g) further provides that Grundy has the burden of proof on Tandem’s equity in the property but that Tandem has the burden of proof on all other issues.
 

 We think that the standards for denying relief from the automatic stay were met. The Bankruptcy Code does not define “adequate protection” as used in § 362(d)(1), but § 361 does set forth three examples
 
 [2]
 
 
 *1440
 
 that satisfy that standard. The first example contemplates the payment of money to liquidate the debtor’s interest in the pledged property. This is precisely what the bankruptcy court provided, and its ruling was substantially affirmed by the district court. It computed Grundy’s interest in the property, and the property’s useful life. It then required Tandem to pay periodically the amounts necessary to liquidate completely Grundy’s equity over the useful life of the property, or, as modified by the district court, “until a plan is confirmed, the case is closed or dismissed, or the property is relinquished, whichever comes first.” As we have said, we were told in argument that the payments are being made. Leaving aside the question of interest on those payments, we think that both courts acted within their statutory authority-
 

 Similarly, we think that the alternative test of § 362(d)(2) was met at the time of the bankruptcy court’s order. While there is apparently no dispute that Tandem lacks any equity in the pledged property, the bankruptcy court found that the property was “necessary to an effective organization.” § 362(d)(2)(B). While the evidence with regard to the charger is considerably weaker than that with regard to the loader, we do not think that this finding is clearly erroneous with regard to either item.
 

 We are mindful, however, that § 362(d)(2)(B) presupposes that the property must be necessary to an
 
 “effective
 
 ” reorganization if relief from the stay is to be properly denied. Both courts made the finding that the property was necessary to an effective reorganization, and we cannot say that these findings were clearly erroneous when made. But the Chapter 11 proceeding was begun on November 4, 1982, the bankruptcy court spoke on April 14, 1983, and the district court on February 20, 1984, and still no plan of reorganization has been proposed. The business and affairs of Tandem are not, in our view, widespread or complex. We can therefore only conclude from inaction on the part of Tandem and its creditors in proposing a plan of reorganization over the period of time which has elapsed since the Chapter 11 proceeding was begun, that an
 
 effective
 
 reorganization may not be possible. We therefore direct that, if within sixty days after our mandate has issued a plan is not proposed and approved, the bankruptcy court shall forthwith lift the automatic stay and permit Grundy to foreclose on its collateral.
 

 IV.
 

 Finally, we consider whether Grundy is entitled to interest on the periodic payments required to be made by Tandem. The bankruptcy court ruled that the payments should bear interest at 9.5% which it deemed the then-current market rate. The district court ruled that as a matter of law, interest was not payable.
 

 As the memorandum opinion of the district court recognized, there is a diversity of views among bankruptcy and district courts as to whether, when periodic payments are required to provide adequate protection for a secured creditor as a condition of denial of relief from the automatic stay, those payments should bear interest. Although the district court denied interest in the instant case, there is contrary authority in the same district.
 
 See In re Virginia Foundry Co.,
 
 9 B.R. 493 (W.D.Va.1981). We think that the split in the authorities was correctly resolved in
 
 In re American Mariner Industries, Inc.,
 
 734 F.2d 426 (9 Cir.1984), the only court of appeals decision to consider the question.
 

 
 *1441
 
 As
 
 American Mariner
 
 points out, the issue to be resolved is essentially whether the statutory requirement of “adequate protection” relates solely to the value of the collateral or whether it relates to the secured creditor’s interest in the collateral. If the former, interest is not payable; but if the latter, interest is payable because an interest in the collateral includes the right after default to take possession of the collateral, sell it and, where, as here, the creditor is a bank, to use the proceeds to make another loan.
 
 American Mariner,
 
 correctly we think, concluded on something less than precise statutory language and precise legislative history that a secured creditor is entitled to the “benefit of its bargain.”
 
 Id.
 
 at 435. This is to say that the secured creditor is entitled to be compensated for the use of its money when it is precluded from liquidating its debt.
 

 American Mariner
 
 also answers the question of what is the proper measure of interest.
 
 American Mariner
 
 held that requiring “monthly interest payments at the market rate on the liquidation value of the collateral,”
 
 id.
 
 at 435, is one method of providing adequate protection. In this regard, we read “market rate” to mean the prevailing rate for the same type of loan at issue and not the lowest (or highest) market rate for various types of other loans. But
 
 American Mariner
 
 recognized that since the objective of allowing interest was to “provide the creditor with the value of his bargained for rights,”
 
 id.
 
 at 435, there should be maximum flexibility in fixing interest. For example, it may well be that the contract rate of interest between creditor and debtor may be lower than the current market rate, and in that event, the contract rate may be appropriate. We adopt these holdings.
 

 We also consider the beginning period for the computation of interest. Interest should not begin any earlier than the time that the creditor petitions for relief from the automatic stay. Even then the timing of interest should be postponed to take account of the time that would be consumed in repossession and sale of the collateral.
 
 Id.
 
 at 435 n. 12.
 

 We therefore hold that Grundy is entitled to interest on the periodic payments to be made to it until the earlier of the time that a plan is confirmed, the case is closed or dismissed, the property is relinquished or the automatic stay is lifted, with the interest to be computed for a period and at a rate consistent with the views we have expressed.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 [1]
 

 . The bankruptcy court found that Tandem had no equity in certain other collateral, i.e., a S
 
 & S
 
 Scoop and a 1982 Chevrolet panel truck, and that they were not necessary for reorganization. It therefore lifted the automatic stay as to these two pieces of equipment. The correctness of this ruling was not challenged in the district court, and it is not before us in this appeal.
 

 [2]
 

 . 11 U.S.C. § 361 provides:
 

 Adequate protection
 

 When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
 

 (1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity’s interest in such property;
 

 
 *1440
 
 (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity’s interest in such property; or
 

 (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity’s interest in such property.