**In re James Forrest PENNY, Jr., SS#: 241–68–5747, Debtor.**

**Bankruptcy No. S–85–01069–5.**

United States Bankruptcy Court, E.D. North Carolina.

Sept. 9, 1985.

---

Richard D. Sparkman, Angier, N.C., for debtor.

Edward J. Harper, II, Greenville, N.C., for FLB and PCA.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matters before the court are motions of the Federal Land Bank of Columbia ("FLB") and the Cape Fear Production Credit Association ("PCA") to lift the automatic stay. The motions, which involve the same issues, the same property, and the same attorneys, were consolidated for hearing. The hearing was held in Raleigh, North Carolina, on September 5, 1985.

### JURISDICTION

This court has jurisdiction over the parties and the subject matter of this action under 28 U.S.C. § 1334 and the general order of reference of the United States District Court for the Eastern District of North Carolina entered on August 3, 1984, pursuant to 28 U.S.C. § 157. These proceedings are "core proceedings" under 28 U.S.C. § 157(b)(2)(G), which this court may hear and determine. 28 U.S.C. §§ 151 and 157(a).

### FACTS

James Forrest Penny, Jr., is a debtor in possession (11 U.S.C. § 1101(1)) having filed a voluntary petition under chapter 11 of the Bankruptcy Code on June 21, 1985. Mr. Penny is an attorney at law, and has maintained a general law practice in Lillington, North Carolina, since 1964.

Over the years, Mr. Penny has purchased real property for investment, and his bankruptcy schedules (Schedule B-1) reflect real estate holdings as follows:

| Description | Value Estimated by Debtor |
|---|---|
| Lot 6, Section 4 Womack Estates<br>Lillington Township<br>Harnett County | $ 45,000.00 |
| Hwy. 401 & E. Harnett St. lot<br>Lillington Township<br>Harnett County | 30,000.00 |
| 43.05 acres, 76.913 acres, 70.233 acres Spears tracts<br>Lillington Township<br>Harnett County (Parcel 3A, 3B and 3C, Plat Cabinet 2,<br>Slide 93) | 271,875.00 |
| 35.531 acres, 36.646 acres, 33.036 acres Spears tracts<br>Lillington Township<br>Harnett County (Parcel 1A, 1B and 1C, Plat Cabinet 2,<br>Slide 93) | 249,625.00 |
| Lot 15, Section 5 Womack Estates<br>Lillington Township<br>Harnett County | 68,000.00 |
| 60 acres, Wilbourne property<br>Hectors Creek Township<br>Harnett County | 300,000.00 |
| 10.358 acres<br>Lillington Township<br>Harnett County | 56,250.00 |
| 65 acres, Thurston Smith Property<br>Neils Creek Township<br>Harnett County | 125,000.00 |
| 418.015 acres, Slaughter Property<br>Buckhorn Township<br>Harnett County | 300,000.00 |
| 75.67 acres, McKinney tract<br>Buckhorn Township<br>Harnett County | 100,000.00 |
| 50.07 acres, Dewar Estate<br>Buckhorn Township<br>Harnett County | 25,000.00 |

The debtor has not filed a plan, but has indicated that his strategy for reorganization is to continue to practice law and to sell his real property in an orderly manner within 6 months. The debtor has not yet sought to sell property under 11 U.S.C. § 363, but he has filed a motion for authority to sell all of his real property free of liens. Mr. Penny has also negotiated adequate protection arrangements with two of his largest secured creditors, Mid-South Bank ("Mid-South") and W.A. Johnson, Trustee for the Spears' Estate Heirs ("Spears' Estate"), which will permit the debtor to have an orderly sale of the real property, provided the debtor makes the agreed adequate protection payments free of the Mid-South and Spears' Estate liens.

FLB and PCA filed objections to the debtor's motion to sell free of liens, but have indicated that they are not opposed to the debtor selling real property free of their liens, provided the costs of sale to be paid from sales proceeds do not exceed $5,000 and FLB and PCA receive adequate protection payments. The debtor has agreed to limit costs of liquidation to $5,000, but has not agreed to make adequate protection payments. FLB and PCA allege that because their interests are not

adequately protected, and because the debtor has no equity in the property and the property is not necessary to an effective reorganization, the automatic stay should be lifted.

There is no dispute concerning the amounts owed to the FLB ($383,000) or to PCA ($31,000). There is a considerable disagreement, however, as to the value of the three tracts of real property which secure the FLB and PCA loans. FLB has a first lien on all three tracts, and PCA's liens are in second position.

Mr. Penny testified that the value of the real property in question is strengthened by the substantial growth of the city of Raleigh and southwest Wake County. While Mr. Penny does not intend to develop the property himself, he does anticipate selling the land to developers for commercial and residential purposes. FLB contends that valuation based on residential or commercial development is highly speculative, and that the property should be valued as rural farm land.

Mr. Penny's testimony indicated the following values:

| Tract I–65 acres | $150,000.00 |
|---|---|
| Tract II–125 acres | 130,000.00 |
| Tract III–418 acres | 300,000.00 to |
| | 350,000.00 |
| | $580,000.00 to |
| | $630,000.00 |

Tract II is subject to an option price of $130,000 which may be exercised in October, 1985.

FLB's appraiser, James L. Dove, testified that the three tracts have a liquidation value of $236,000, but that if the property was marketed in an orderly manner prior to March, 1986, the property would have a value of $313,750.

For purposes of this hearing, the court accepts the FLB values and finds the value of the real property to be as follows:

| Tract | Liquidation Value | Value if orderly sale before March, 1986 |
|---|---|---|
| I | $ 50,000.00 | $ 60,000.00 |
| II | 56,000.00 | 68,750.00 |
| III | 130,000.00 | 185,000.00 |
| | $236,000.00 | $313,750.00 |

Based upon these values, the debtor has no equity in the property. FLB's indebtedness $383,000 is "undersecured," and PCA's collateral has no value at all.

Although the debtor has no equity, the three tracts are an important part of the debtor's overall liquidation program and are necessary to an effective reorganization.

Furthermore, the court finds that FLB and PCA will benefit from the orderly liquidation of the three tracts by the debtor, and that their interests are adequately protected as long as the debtor aggressively pursues the sale of these three tracts, limits costs to $5,000, and obtains purchasers for these tracts within 6 months.

If the automatic stay were to be lifted and FLB and PCA permitted to foreclose, the property would bring the liquidation value, $236,000, less costs, which the FLB would receive, at the earliest, in late October, 1986. If the three tracts are sold in an orderly manner over a 6 month period, however, the property will realize $308,750 ($313,750, less $5,000 costs), which sum is greater than the amount FLB would realize if it received the liquidation value immediately and invested those funds for 6 months at FLB's contract rate (12%)—$308,750 > $250,160 ($236,000 + interest @ 12% for 6 months).

FLB also has a lien on FLB stock in the amount of $17,200. The debtor has no equity in this stock, and the stock is not needed for reorganization.

## DISCUSSION AND CONCLUSIONS

FLB and PCA contend that the automatic stay provided by 11 U.S.C. § 362(a) should

be lifted as to the three tracts of real property and the FLB stock because the debtor has no equity in the property, and the property is not needed for reorganization (11 U.S.C. § 362(d)(2)), and because there exists a lack of adequate protection for their interests (11 U.S.C. § 362(d)(1)).

11 U.S.C. § 362(d)(2) provides that the automatic stay with respect to property shall be terminated, annulled, modified, or conditioned on request of a party in interest after notice and hearing if: (A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization.

■ The debtor has no equity in the three tracts of real property, but this property is needed for an effective reorganization. Accordingly, the automatic stay with respect to the three tracts should not be lifted pursuant to 11 U.S.C. § 362(d)(2). The automatic stay should, however, be lifted with respect to the $17,200 FLB stock because the debtor has no equity in the stock and the stock is not needed for reorganization.

11 U.S.C. § 362(d)(1) provides that the automatic stay of 11 U.S.C. § 362(a) shall be terminated, annulled, modified, or conditioned on request of a party in interest after notice and hearing "for cause, including the lack of adequate protection of an interest in property."

■ FLB and PCA contend that adequate protection for their interests in the three tracts of real property must include periodic interest payments to compensate for loss caused by the delay in realizing the value of the collateral. FLB's and PCA's own evidence, however, demonstrates that a 6 month delay to permit the orderly liquidation of the three tracts would not result in any loss whatsoever. PCA is not·disadvantaged by the stay because FLB's prior liens of $383,000 exceed the value of the collateral ($236,000 or $313,750) and PCA's second liens have no value. FLB's liens have a liquidation value of $236,000, but FLB's interest, according to its own appraiser, is not damaged by the delay—in

fact, FLB's interest is *enhanced* by an orderly liquidation. If FLB invested $236,000, the liquidation value of its collateral, at its contract rate of 12% for 6 months, it will have $250,160. If the property is sold in an orderly manner over a 6 month period, the value of FLB's collateral will be $313,750, less costs of $5,000 = $308,750.

FLB argues that a recent decision of the United States Court of Appeals for the Fourth Circuit, *Grundy National Bank v. Tandem Mining Corporation*, 754 F.2d 1436 (4th Cir.1985), requires a debtor to provide adequate protection to "undersecured" creditors in the form of periodic interest payments based on the collateral's liquidation value and the lender's current market rate of interest (or contract rate, whichever is less).

■ The *Grundy* case adopted the reasoning of the Ninth Circuit in *In re American Mariner Industries Inc.*, 734 F.2d 426 (9th Cir.1984) which held·that adequate protection does not solely relate to the value of the collateral, but also extends to the secured creditor's *interest* in the collateral. In *Grundy* it was held that the secured creditor's interest in the collateral includes "the right after default to take possession of the collateral, sell it and, where, as here, the creditor is a bank, to use the proceeds to make another loan." *Grundy*, 754 F.2d at 1441. A secured creditor is "entitled to be compensated for the use of its money when it is precluded from liquidating its debt." *Grundy*, 754 F.2d at 1441. Otherwise, the secured creditor would be denied the benefit of its bargain.

In *Grundy* it was held that the undersecured creditor was entitled to interest as part of its adequate protection, but adequate protection for undersecured creditors, need not always take the form of periodic interest payments.

We agree that this (monthly interest payments at the market rate on the liquidation value of the collateral) is one method of providing adequate protection but by no means the only method available to the debtor. Consistent with the policies behind sections 361 and 362, the

debtor should be permitted maximum flexibility in structuring a proposal for adequate protection. The result, however, should as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights. *American Mariner*, 734 F.2d at 435.

Adequate protection is designed to protect the secured creditor's interest in collateral from deterioration. Nothing more is required.

In the present case, FLB and PCA are not harmed by the automatic stay if the debtor aggressively pursues the sale of the three tracts, limits sales costs to $5,000, and obtains purchasers for this property within 6 months. The interests of FLB and PCA are adequately protected without requiring the debtor to make periodic interest payments.

Compensation for "lost opportunity costs" in circumstances such as in *Grundy* (a claim of $25,968.51 (excluding interest) secured by a loader with a fair market value of $26,000, and a battery charger with a fair market value of $1,200), and in *American Mariner* (a claim of $370,000 secured by collateral worth $110,000) is required to prevent the debtor and unsecured creditors from receiving a windfall at the expense of the secured creditor (*American Mariner*, 734 F.2d at 435). To insist upon such compensation when the secured creditor is not harmed by the delay, however, would result in a windfall to the secured creditor at the expense of the debtor and the holders of unsecured claims.

Where the continuation of prohibition against lien enforcement is not detrimental to the secured creditor, and the delay occasioned by the automatic stay results in no loss to the undersecured creditor, adequate protection need not include interest payments on the collateral's liquidation value. Accordingly,

IT IS HEREBY ORDERED that the Federal Land Bank of Columbia's motion to lift stay is GRANTED with respect to the $17,200 FLB stock; and

IT IS FURTHER ORDERED that the motions of the Federal Land Bank of Co-lumbia and Cape Fear Production Credit Association to lift stay with respect to all other property is DENIED and that the automatic stay of 11 U.S.C. § 362(a) shall remain in full force and effect provided that the debtor:

(1) Aggressively pursues the sale of the three tracts which secure the indebtedness to FLB and PCA, and keep FLB and PCA advised of those efforts;

(2) Limits the costs of sale of the three tracts to $5,000;

(3) Files a plan of reorganization within the time limits set by this court;

(4) Obtains purchasers for the three tracts within 6 months from the date of this order; and

IT IS FURTHER ORDERED that either FLB or PCA may request that this court review the debtor's compliance with the conditions set forth herein, and that upon such request, an expedited hearing will be held.