In the Matter of John Patrick DEETER and Becky Deeter, Debtors.

Bankruptcy No. 85–30061.

United States Bankruptcy Court, N.D. Indiana, South Bend Division.

Sept. 16, 1985.

David Peebles, Daniel J. Skekloff, Fort Wayne, Ind., for debtors.

Steven L. Hostetler, Mishawaka, Ind., for First Nat. Bank of Warsaw.

## ORDER

ROBERT K. RODIBAUGH, Bankruptcy Judge.

At South Bend, Indiana, on September 16, 1985.

This matter is before the court on secured creditor's, First National Bank of Warsaw (Bank), motion for relief from stay and application for abandonment filed on April 11, 1985. In the alternative, the Bank seeks adequate protection of its interest in the debtors' real and personal property pursuant to § 362 of the Bankruptcy Code. On April 15, 1985, the debtors filed an objection to the application for abandonment. Following a pre-trial conference

held on May 7, 1985, the debtors were ordered by this court to either continue making payments on the Buick automobile or abandon the vehicle. Trial was held on June 6, 1985. Following a briefing period, the matter was taken under advisement on July 25, 1985.

The debtors, John and Becky Deeter, own and operate a farm in Kosciusko County, Indiana. They raise crops and livestock on the farm. Mr. Deeter is also employed at R. R. Donnelly in Warsaw, and Mrs. Deeter is employed at the Claypool Elevator. On January 24, 1985, the debtors filed their voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the filing of said petition, debtors have remained in possession of their bankruptcy estate as Debtors-in-Possession, but they have not submitted a reorganization plan.[1]

As of April 17, 1985, the debtors were indebted to the Bank in the amount of $136,072.70 on the basis of promissory notes dated April 1, 1980 and December 10, 1984, and by virtue of a guaranty signed by John P. Deeter on September 14, 1984. Interest is accruing on these obligations at the rate of $42.71 per diem. The debt is secured by a first mortgage on the debtors' 104–acre parcel of farm real estate and a security interest in the debtors' Black Angus cattle. In addition, the Bank contends it has a properly perfected security interest in the debtors' International Loader, No. 540.

The Bank contends that the debtors' equity in the property is minimal and that the debtors do not have the ability to effectively reorganize. At trial the Bank presented an appraisal of the debtors' farm, including the house, barn, shed and land, totalling $78,000.00. The Bank contends the debtors have made no payments on the real estate since December, 1981.

The debtors agree that the Bank is an undersecured creditor. Although the debtors submitted no appraisals, they contend that except for the ten Black Angus cows,

---

1. The debtors' exclusive 120-day period in which to file a plan expired on May 24, 1985. 11 U.S.C. § 1121(b).

the property of the estate in which the Bank holds an interest is all real estate and not subject to any decline in value. The Bank therefore is not entitled to any adequate protection. The debtors further contend the property is necessary for an effective reorganization.

### Discussion

The Bank seeks relief from the stay to foreclose on the real estate or adequate protection of its interest in the property. Section 362(d) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property under subsection (a) of this section of such party in interest; or
>
> (2) with respect to a stay of an act against property if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization.

A moving creditor seeking the lifting of the automatic stay pursuant to 11 U.S.C. § 362(a) must establish the validity and perfection of its security interests, the amount of the debt and other allowable costs secured by its claim and must carry the ultimate burden of proof with respect to equity. Section 362(g) provides:

> In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
>
> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
> (2) the party opposing such relief has the burden of proof on all other issues.

The Bank has established that it has a validly perfected mortgage on the debt-

ors' farm real estate. The appraised value of the real estate is $78,000.00. In addition, the Bank has first lien on ten (10) Black Angus cattle appraised at $6,025.00. The total value of the Bank's collateral is $84,025.00. Although the debtors dispute this valuation, they presented no evidence to persuade the court differently. The debt owed to the Bank was stipulated to be $136,072.70 as of April 17, 1985. Therefore the Debtors-in-Possession have no equity in the subject real estate, the burden of proof with respect to the necessity of such property in an effective reorganization must be borne by the Debtors-in-Possession. 11 U.S.C. § 362(g)(2).

Property is necessary for an effective reorganization "whenever it is necessary either in the operation of the business or in a plan, to further the interests of the estate through rehabilitation or liquidation." *In re Koopmans,* 22 B.R. 395, 407 (Bkrtcy. Utah 1982). In this case the Debtors-in-Possession have no equity in the property upon which the Bank holds a first mortgage, but it is necessary to an effective reorganization as is set forth in 11 U.S.C. § 362(d)(2)(B). The property is necessary to an effective reorganization because the debtors are farmers who utilize the property in their farming operation. The loss of the barn and the land, as well as their home, would certainly doom any prospect for an effective reorganization.

Therefore, at this stage in the Chapter 11 proceeding the court denies the Bank's application for abandonment of the debtors' property.

Having made the determination that the debtors should be allowed to retain their property so they may effectively reorganize, the next issue is whether an undersecured creditor is entitled to receive adequate protection for the loss of its foreclosure rights and the use of the proceeds from the foreclosed property during the pendency of the Chapter 11 proceeding.

The debtor argues that it is only the value of the collateral that requires protection, and because the collateral is not declining in value, adequate protection is not

required. This court does not agree. Section 361 provides:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

Although §§ 361(1) and 361(2) set forth specific examples of adequate protection methods, the last alternative method in § 361(3) was intended by Congress as a catch-all provision. See, Collier on Bankruptcy ¶ 361.01[4] (15th ed. 1985). It is in subsection (3) that the indubitable equivalent language appears. This language initially appeared in the Senate's version of § 1129 of the Code, which deals with the requirements of confirmation of a reorganization plan. The Senate Report indicates that the term derives from Judge Learned Hand's opinion in *Metropolitan Life Ins. Co. v. Murel Holding Corp.*, 75 F.2d 941 (2nd Cir.1935). In *Murel* a secured creditor appealed from an order denying relief from stay of its right to foreclose. On appeal the secured creditor argued that its interest was not adequately protected. Judge Hand agreed and commented on the concept of adequate protection:

> It is plain that "adequate protection" must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalence. 75 F.2d at 942.

By using the indubitable equivalent language in § 361, it seems apparent that Congress envisioned compensation for the delay in exercising foreclosure rights as a part of adequate protection. See, Molbert, Adequate Protection for the Undersecured Creditor in a Chapter 11 Reorganization: Compensation for the Delay in Enforcing Foreclosure Rights, 60 N.D.L.Rev. 515 (1984).

This court has previously held that section 361 requires adequate protection of the present value of the secured creditor's interest. See, *Matter of Langley*, 30 B.R. 595 (Bkrtcy.N.D.Ind.1983). This interest includes the creditor's right, which has substantial and measurable value, to take possession of and sell collateral on the debtors' default. See, *In the Matter of Robert Lee Farms, Inc.*, Case. No. 84–30894 (Bkrtcy.N.D.Ind. March 21, 1985) (unpublished opinion). The secured creditor bargains for this right when it agrees to extend credit to the debtor, and both parties consider the right part of the creditor's bargain. That right constitutes an interest in property that should not go unprotected because an interested party is involved in a bankruptcy proceeding. See, *In re American Mariner Industries, Inc.*, 734 F.2d 426, 435 (9th Cir.1984).

The legislative history of the Bankruptcy Code emphasizes the scope of adequate protection. The House Report states:

It is not intended to be confined strictly to the constitutional protection required, however. The section, and the concept of adequate protection, is based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor's interest. Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for. H.R.Rep. No. 595 at 339, 1978, U.S. Code Cong. & Ad. News at 5787, 6295.

In this case it is clear that the Bank is not entitled to the "absolute right to his bargain" which is the right to take possession of and sell the collateral. This right was precluded by the court's finding that the property is necessary to the debtors' reorganization. Nonetheless, Congress seems to have recognized that the secured creditor's rights of repossession and sale are part of its "bargain" which section 361 insures it will receive at least "in value" if not "in kind."

With regard to value, the House Reported stresses that the language of section 361 is directed toward "the value of the protected entity's interest in the property involved."

The section does not specify how value is to be determined nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principles. H.R.Rep. No. 595 at 339, 1978 U.S.Code Cong. & Ad.News at 6295.

In *American Mariner*, the Ninth Circuit interpreted the applicable parts of the Bankruptcy Code as well as the legislative history to determine that: the interest entitled to protection under §§ 361 and 362(d) is "the secured creditor's interest and not merely the value of the collateral. *American Mariner*, 734 F.2d at 430. When the creditor is deprived of the benefit of its bargain, i.e., its right to foreclose on the property and to reinvest the proceeds, the Code requires as a *quid pro quo* that the 'value' of its bargain must be adequately protected. The test of adequate protection is twofold: first, the protection must adequately safeguard principal, and second, the protection must ... effectively ... compensate the secured creditor for loss of value." *Id.* at 432. The latter element requires a calculation of the present value of the secured creditor's interest. Lastly, the Ninth Circuit discerned a Congressional objective of increased creditor protection in the Bankruptcy Reform Act of 1978; therefore, cases decided before the enactment of the Code are of little relevance in construing §§ 361 and 362. *Id.* at 434.

This court agrees with the *American Mariner* holding and analysis. The Ninth Circuit's decision is a sensible interpretation of the Code provisions, and it achieves a rational result.

■ Having determined that the Bank's interest is entitled to protection, the court must decide what protection is adequate. Pursuant to § 361, the debtor must provide cash payments, substitute liens or other "indubitable equivalents." Considering the debtors' unwillingness to dispose of any of their property and the availability of their off farm income, cash payments would seem to be the best method of adequate protection.

Determining the amount of those payments is the next question. Although *American Mariner* does not provide a formula, because the Code protects the Bank's right to investment return on foreclosure proceeds, the protective payments should be a function of the price that could be realized on foreclosure multiplied by the rate of return the Bank could expect on reinvestment of the foreclosure proceeds. Therefore, the court must determine, i) the

amount that would be realized on foreclosure; ii) the rate of return on the proceeds, and iii) the date when foreclosure would occur and investment return would begin. See, *In re Bear Creek Ministorage, Inc.,* 49 B.R. 454, 457 (Bkrtcy.S.D.Tx.1985).

The amount realized on foreclosure is difficult to determine for two reasons. First, it is difficult to determine : market in which the property will sell, and second, the evidence of prices available consists to a large extent of estimates and appraisals. The testimony in the present case indicated at the present time farm real estate is relatively stable; however, an auction sale held within a short period of time (30 days) would result in a 10% loss in value.

To compute present value, the court will assume the Bank will act as a prudent businessman and would follow reasonable marketing techniques, including the purchase of the collateral at foreclosure in partial or full satisfaction of the indebtedness, followed by a reasonable and prudent effort to market the property. Because the Bank's right to foreclose gives it no financial benefit until the sale to a third party, the payments by the debtors need not begin until that date. This procedure will protect the present value of the Bank's right to foreclose and to reinvest the proceeds.

Determining the applicable interest rate is difficult because interest rates are normally a function of both the risk and the term of the debt. Because the present value of the Bank's right to reinvest requires protection according to *American Mariner,* the correct interest rate is the rate that would be realized by the Bank when the proceeds are reinvested. In the present cse that would be the Bank's lending rate.

Finally, the court must determine the applicable hypothetical foreclosure and reinvestment date in order to compute the date for the valuation of the property and for the determination of the interest rate. This date would also be the date on which payments would begin. Looking to *American Mariner,* the objective is to compensate for the denial of the right to foreclose. That denial arises upon the entry of the order for relief which coincides with the filing of the case. The applicable date for valuation of the property and for determination of the interest rate would be calculated by adding the foreclosure delays to the date that the bankruptcy petition was filed. See, *American Mariner,* 734 F.2d 426, 435 footnote 12. The date so computed comports with *American Mariner* and would be the earliest date on which the Bank could expect a return on its interest in the property.

The Fourth Circuit concurs with the Ninth Circuit and adopts the holdings of *American Mariner* in *Grundy National Bank v. Tandem Mining Corporation,* 754 F.2d 1436, 1441 (4th Cir.1985). However, the Fourth Circuit seems to establish a different beginning period for the computation of interest. The Fourth Circuit stated:

> We also consider the beginning period for the computation of interest. Interest should not begin any earlier than the time that the creditor petitions for relief from the automatic stay. Even then the timing of interest should be postponed to take account of the time that would be consumed in repossession and sale of the collateral. *Grundy,* 754 F.2d at 1441.

This beginning date for the computation of interest would not be supported by *American Mariner.* As Judge Steen points out in a footnote in *Bear Creek:*

> "If the *Grundy* court means that all computations start from the date of filing of the § 362(d) motion for relief, then the conclusion does not seem to be supported by logic or by *American Mariner.* The protection should be determined by the date on which that right to foreclose was impinged, not determined by when the protection was requested. *American Mariner* says that calculations are made from the date of the *petition. Grundy* might have construed that language to mean the date that the creditor 'petitions for relief from the automatic stay.' *See* 754 F.2d 1436, 1441. But the proper pleading for relief from

the stay is a motion. The "petition" referred to in *American Mariner* is more likely the petition for relief filed by the debtor. If *Grundy* means that adequate protection *payments* may not begin until after a motion for § 362(d) relief is filed even though the applicable delays are calculated from the date of the petition, then the result is reasonable; that limitation would prevent hardship to the Debtor caused by a "late" § 362(d) motion that could require sizeable "make-up" payments for which the Debtor had not planned. It is not unreasonable to require the creditor to be vigilant in requesting protection if it wants protection." 49 B.R. at 458 (footnote 11)

In the present case, as in *Bear Creek,* the issue of when payments begin is not affected by the date the motion for relief from stay was filed, because it was filed prior to the earliest date when adequate payments would begin under either *American Mariner* or *Grundy* (as interpreted in *Bear Creek* ).

In applying these guidelines to the present case, the court finds that the Bank's bargain was altered by the Bankruptcy Code on January 24, 1985, the date the debtors filed their petition. The debtors must provide the Bank with adequate protection for the Bank's interests in the property by one of the methods specified in § 361. To compute the present value of the lost economic opportunity, one determines the expected foreclosure proceeds and the interest return that the Bank would receive if they had been able to exercise their foreclosure rights. To determine the date on which payments must begin, one adds the reasonable marketing foreclosure delay to the date of filing. Six months is considered the average time necessary to foreclose and sell the property. Therefore, adequate protection payments should begin on July 24, 1985.

The fair market value of the debtors' collateral as determined by the appraisal dated May 31, 1985 and June 4, 1985 is $84,025.00. Absent contrary evidence, the court will assume this value did not change significantly as of July 24, 1985.

The interest rate that the Bank could earn on reinvestment is not certain. An officer of the Bank testified that interest rates can vary from 12½% to 15% depending on the type of loan and risk involved. Assuming for our purposes that the Bank uses the proceeds to make a variable rate loan secured by real estate, the applicable rate would be 12¼%. With such an interest rate, a borrower would pay the Bank at least $10,293.06 per year ($84,025.00 × .1225). Dividing this amount by 12 would result in monthly payments of $857.75.

The debtors argue that adequate protection payments should not be required because the value of the Bank's collateral is not declining. As the court has discussed previously, the value of the collateral is not what is being protected. In accordance with *American Mariner* and this court's previous holdings, the value being protected is the Bank's bargained for right to foreclosure which has been held in abeyance by the automatic stay.

Another argument urged by the debtors is that the allowance of interest payments would be inconsistent with other sections of the Bankruptcy Code. The debtors cite § 506(b) which provides for interest on oversecured claims but makes no mention of undersecured claims. Another argument proposed by the debtors is that the Bank is not entitled to payment on the unsecured portion of its claim. This argument is not well founded, because this decision only allows protection for the interest of a secured creditor. To the extent that the Bank has a claim in excess of the value of the collateral, no protection is available under this decision.

In conclusion, the court holds that the Bank is entitled to adequate protection payments for the delay in enforcing its bargained-for rights during the interim between the filing of the petition and confirmation of a plan. The debtors are ordered to make monthly adequate protection payments to the Bank in the amount of $857.75

beginning on September 24, 1985. In addition, the payments due for July and August can be made in four equal installments beginning September 24, 1985. The automatic stay will remain in force so long as these adequate protection payments are made to the Bank. The debtors are further ordered to file a disclosure statement and plan within 30 days from the date of this order. The court denies the Bank's application for abandonment at this time.

SO ORDERED.