KAYATTA, Circuit Judge,
dissenting.
I agree with my respected colleagues that Pinpoint's appeal provides no basis upon which to reverse the ruling of the bankruptcy court refusing to lift the automatic stay. I nevertheless dissent from the judgment of dismissal, because this court should decide this case by ruling on the merits, rather than by creating a circuit split in order to find the challenged order of the bankruptcy court non-appeal-able. Bankruptcy law is an area in which uniformity has particular value. See Daniel A. Austin, Bankruptcy and the Myth of “Uniform Laws," 42 Seton Hall L.Rev. 1081, 1135-39 (2012); Erwin Chemerinsky, Decision-Makers: In Defense of Courts, 71 Am. Bankr.L.J. 114-15 (1997) (pointing to “expertise and uniformity” as the “two major advantages” of specialized bankruptcy courts). And as my colleagues acknowledge, seven of the eight other circuits that have ruled on the appealability of orders denying relief from the automatic stay have held that such orders are categorically appealable.[22] Even the Third Circuit, which was until now the only federal court of appeals to so much as feint in the direction of a rule admitting of an exception, has itself never encountered an order that fell within the exception it hypothesized. Indeed, in the dictum in which it postulated such an exception, the court sketched that exception’s contours so narrowly as to ensnare only tentative orders-those that deny relief “without prejudice because the record [is] incomplete, discovery [is] ongoing[,] or the court re-quirefs] further research on the issue before it.” See In re West Elecs. Inc., 852 F.2d 79, 82 (3d Cir.1988).[23]
*189 The majority is certainly correct that we should not join our sister circuits simply to form a herd. At the same time, though, the majority cannot dispute the notion that, at the margins (and this case is certainly there, see Majority Op., at 185-86), uniformity has a positive value, especially in setting federal bankruptcy law. See, e.g., U.S. Const., art. I, § 8, cl. 4 (granting Congress the power to adopt “uniform Laws on the subject of Bankruptcies throughout the United States”). And while the majority speculates that its “more nuanced” approach preserves resources and inhibits unnecessary appeals as compared to the uniform approach of seven other circuits, my knowledgeable colleagues point to no appeal in any circuit — ever—that would have been precluded or rendered less difficult by adoption of the majority’s rule. In this important respect, the majority’s approach values abstraction borne of theory rather than pragmatism borne of experience.
My colleagues are also correct, of course, that relief from the automatic stay differs from a typical injunction because Congress has effectively determined that, in bankruptcy, an injunction is the default position. And I need not quibble with the conclusion that this determination represents an implicit judgment that the equities in bankruptcy are more likely to weigh in favor of an injunction, at least initially. In this manner, Congress has placed on the party opposing the automatic stay the burden of seeking and justifying a change in the status quo. So far, so good. Where the majority then errs conceptually is in finding the reallocation of the burden of changing the status quo to justify a heightened degree of stinginess in allowing an appeal from a ruling preventing such a change. This cannot be correct. History, custom, and practice make the default position in ordinary, non-bankruptcy civil cases “no injunction,” thereby placing the burden of seeking and justifying an injunction on the party desiring to change the tentative status quo. Yet it is clear that appeals by parties who are unsuccessful in securing a status-quo-altering injunction are routinely allowed. In short, the question of which party has the burden of changing the default status quo has no logical bearing on the question of appeala-bility. In each instance, the lower court has exercised its equitable jurisdiction in a manner that immediately resolves a putative claim of irreparable harm. And in each instance, an appeal should be allowed to review that decision.
Even under the majority’s new test, the justification for refusing to hear this appeal is weak. In concluding otherwise, the majority swims even against the current in our own circuit. As the majority correctly concedes, In re Calore, 288 F.3d 22, 34 (1st Cir.2002), did not decide whether a refusal to lift the automatic stay is or is not always appealable. Rather, it did only what it needed to do: it decided that the refusal to lift the automatic stay in that particular case was appealable. And in making that finding, the court relied simply on the fact that the bankruptcy court “clearly did decide the relevant dispute between the parties.” Id. In the race-to-the-courthouse case now before us, the relevant dispute concerns not which court hears the merits of the case, but rather, which court will decide that question. And by sending the case to Puerto Rico for a resolution of the *190 first-filed issue, the bankruptcy court did indeed decide that dispute finally against Pinpoint.[24] That relevant dispute may be rarified, and any harm speculative. But those are reasons to deny the appeal on the merits, not to create an idiosyncratic exception to the norm that such orders are appealable.
Twenty-four years ago, Judge Winter observed that “the purpose of the finality rule, judicial economy,” would not be served by an ad hoc, case sensitive approach to determining jurisdiction over orders denying relief from the stay. In re Sonnax, 907 F.2d at 1285. The reasoning the majority provides today proves that warning prescient, as the court finds itself unable to decline jurisdiction without resting explicitly on an on-the-merits rejection of Pinpoint’s argument that, as an incident of its status as first-filer, it is entitled to litigate not only the merits of its case, but also its venue challenges, in Virginia. See Majority Op., at 188 (“[E]ven under Pinpoint’s caselaw, the judge in the Puerto Rico action can participate in any slugfest over the first-filed rule, which means Pinpoint’s final argument sails wide of the mark.”), 186 (“So, as the situation now stands, Pinpoint can litigate everything, the first-filed issue and the contract imbroglio. It just has no guaranty that it will litigate in its preferred venue.”); compare Sonnax, 907 F.2d at 1285 (warning that “[t]he jurisdictional ruling will necessarily require a full briefing of all issues and consume as much judicial resources as an appeal”).[25] As I understand the majority’s rule, if Pinpoint were correct in claiming an entitlement, notwithstanding any countervailing consideration, to litigate venue in Virginia, we would take jurisdiction. Indeed, under the majority’s rule, the only cases in which there will be no jurisdiction are precisely those cases, such as this one, in which the merits decision is straightforward. Because the majority’s jurisdictional rule requires us to analyze the merits even while it purports to shield us from having to do so, the rule (which cannot be said to flow from either a constitutional or a statutory requirement) fails even to further the single aim — judicial economy— that could provide it a justification.
The majority objects to this characterization, suggesting that instead of deciding the merits, it need only characterize the “effect” of the bankruptcy court’s ruling. But parsing out the degree and extent of an injunction’s effects on the parties will often be not only an issue, but the key issue in considering the merits of an appeal from an order denying relief from the automatic stay. Moreover, even in cases such as this one, in which the merits could *191 be easily disposed of, divining the “effect of the bankruptcy court’s combined rulings,” see Majority Op., at 186 n. 21, may be no easy task.
Here, for example, my colleagues compare the order of the bankruptcy court to an order transferring venue, which is not appealable even if entered by a district court. See id. At first blush, this seems a reasonable point. Actually, though, an order transferring venue is an order by one federal court surrendering venue to another in a given action. What has happened in this case, by contrast, is that one federal court (the bankruptcy court) has, by refusing to lift the automatic stay, left in place an injunction barring Pinpoint from continuing to pursue a lawsuit in another federal court, which has not surrendered venue, but has instead determined that it is the proper venue for the action.[26] Such orders, when entered by the district courts of the United States, are in fact routinely appealable. Small v. Wageman, 291 F.2d 734, 734 (1st Cir.1961) (“Since the appeal is from an order of the District Court granting an injunction, this court clearly has appellate jurisdiction under Title 28 U.S.C. § 1292(a)(1).”). In short, by mischaracter-izing the effect of the order entered by the bankruptcy court, the majority has insulated from interlocutory review an injunction that would plainly be reviewable were it entered by an Article III court, thus turning bankruptcy’s more “flexible approach to finality,” see Majority Op., at 182, on its head.
All told, the majority’s approach transforms what was until today a non-issue into fodder for briefing and analysis in the nascent sub-sub-specialty of Appellate Jurisdiction over Bankruptcy Court Orders Denying Relief From Stay. Unless that area draws only counsel who, unlike me, are able to confidently and accurately anticipate how the fine nuances of the majority’s exception will apply in future cases, we will receive more briefing on losing jurisdictional objections, and no less briefing on the merits. The majority barters away simplicity in exchange for promised efficiency gains, but I fear that the deal will leave us with neither.
I would therefore proceed more directly and simply to the merits of the appeal. The bankruptcy court’s order reasonably balances competing claims of harm, protects the assets of the bankruptcy estate against waste resulting from a race to the courthouse, and deprives Pinpoint of only an advantage in posture and preference rather than an opportunity to be heard. For the straightforward reason that the order below thus bears no sign of any abuse of discretion, I would reject Pinpoint’s appeal on the merits. See generally In re Myers, 491 F.3d 120, 128 (3d Cir.2007) (observing that the Bankruptcy Court is accorded “wide latitude” to “balance the equities when granting relief from the automatic stay”). Because the majority instead chooses to create a new and entirely unnecessary precursor battleground that will add expense and delay while likely never altering the practical outcome of even a single case, I respectfully dissent.

. See Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.), 907 F.2d 1280, 1284-85 (2d Cir.1990); Grundy Nat’l Bank v. Tandem Mining Corp., 754 F.2d 1436, 1439 (4th Cir.1985); In re Lieb, 915 F.2d 180, 185 n. 3 (5th Cir.1990); Aetna Life Ins. Co. v. Leimer (In re Leimer), 724 F.2d 744, 745-46 (8th Cir.1984); Crocker Nat’l Bank v. Am. Mariner Indus. (In re Am. Mariner Indus.), 734 F.2d 426, 429 (9th Cir.1984), overruled in part on other grounds by United Sav. Ass’n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); Eddleman v. Dep’t of Labor, 923 F.2d 782, 784-85 (10th Cir.1991), overruled in part on other grounds by Temex Energy, Inc. v. Underwood, 968 F.2d 1003, 1005 n. 3 (10th Cir.1992); In re Dixie Broad., 871 F.2d 1023, 1028 (11th Cir.1989).

. My colleagues suggest that the bankruptcy court's order was based on an incomplete record, “because the bankruptcy court did not have the benefit of a district court’s decision on the first-filed issue.” See Majority Op., at 186 n. 20. But that is simply no rejoinder to Pinpoint’s argument that it is entitled to litigate precisely that issue (i.e., the first-filed *189 issue) in the Virginia court. My colleagues do not explain, because they cannot explain, what relevance the Puerto Rico district court's decision on the first-filed issue will have on the purely legal question of whether that court is entitled to decide that issue in the first place. For that reason, this case, much like every case the Third Circuit has ever confronted, falls outside the West Electronics exception.

. The majority suggests that if the judge in the Puerto Rico action determines to proceed to the merits, "Pinpoint can again ask the bankruptcy court to lift the stay against the Virginia action, on the theory that it has no other way to stop the parallel action in Puerto Rico.” Majority Op., at 186. This is correct, but hardly relevant. For if the court in Puer-to Rico accepts venue and proceeds with the action, any effort to persuade the bankruptcy court to allow the district court in Virginia to decide whether it wants to belatedly join in a race to judgment hardly restores Pinpoint to the position in which it found itself before the stay took effect. The majority's suggestion that it will be sufficient to close the barn door only later on, long after the horse has left, illustrates perfectly why the rule permitting appeals is the correct one.

. My colleagues object to Judge Winter’s observations, responding that they, "for example, have not said who’s right or who's wrong on the first-filed issue.” See Majority Op., at 186 n. 21. But this deserves no special credit: Were my colleagues to properly conclude, on the merits, that the bankruptcy court acted permissibly when it allowed the issue to be decided in the Puerto Rico litigation, it would be strange indeed if they then decided the issue themselves.

. The Virginia court has, in a reported decision, already denied Atlas’s motion to transfer the Virginia action to Puerto Rico. See Pinpoint IT Servs. v. Atlas IT Export Corp., 812 F.Supp.2d 710 (E.D.Va.2011).