**In re LAKE RIDGE ASSOCIATES,**
**Debtor.**

**Civ. A. Nos. 2:94cv223, 2:94cv328.**

United States District Court,
E.D. Virginia,
Norfolk Division.

June 23, 1994.

Jerrold G. Weinberg, Cecila Ann Weschler and Michael Henry Wojcik, Norfolk, VA, for Lake Ridge Associates.

David Scott Serry, Patrick Louis Hayden and Thomas Edward Cabaniss, Norfolk, VA, for NationsBank.

*MEMORANDUM OPINION AND ORDER*

JACKSON, District Judge.

## I. INTRODUCTION

The debtor, Lake Ridge Associates ("Lake Ridge") and Nationsbank of Virginia, N.A.

("Nationsbank") appeal separate issues from the bankruptcy court's disposition of this case.[1] Lake Ridge appeals the bankruptcy court's order dated February 1, 1994, in which the court granted Nationsbank's motion to lift the automatic stay pursuant to § 362(d)(2) of the Bankruptcy Code.[2] Nationsbank appeals the bankruptcy court's order dated February 9, 1994, in which the property in question was set for valuation pursuant to section 506(a) of the Bankruptcy Code.

## II. FACTS

Lake Ridge is a single-asset Virginia general partnership comprised of eleven general partners. It was organized in 1986 to acquire and develop real property in Virginia Beach, Virginia. Lake Ridge obtained loans from Nationsbank's predecessor (Sovran) in the approximate amount of $27,382,000 to purchase 1,192 acres of property in the Princess Anne section of Virginia Beach. Nationsbank secured the property by taking first position deeds of trust and by obtaining individual guarantees from Lake Ridge's general partners for portions of the loan amounts.

The land development project ran into problems from the outset. Recurring problems with zoning and market conditions led to the collapse of the project. By late 1990, the entire amount of the loan had been disbursed and, following a short period of time when the general partners were making cash payments, Lake Ridge stopped making its monthly payments to Nationsbank (last payment in February 1991). In addition to not receiving its monthly payments from Lake Ridge, Nationsbank had to pay delinquent taxes on the land totalling approximately $1,411,000 (with another $500,000 still due). The land remains largely undeveloped today.

While Nationsbank began suing various Lake Ridge partners in state court in July, 1992, Nationsbank and Lake Ridge continued to negotiate regarding Lake Ridge's obligations through the summer of 1993. On June 30, 1993, however, Lake Ridge and certain of its partners filed a petition in the United States Bankruptcy Court for the Eastern District of Virginia. At the time of the petition, Lake Ridge owed Nationsbank roughly $27,382,000 in principal, $6,761,000 in interest, $1,411,000 in back taxes, plus costs and attorney's fees.

On August 31, 1993, Nationsbank filed a motion to dismiss Lake Ridge's bankruptcy petition. The bankruptcy court denied this motion on November 23, 1993. On December 27, 1993, Lake Ridge filed a proposed plan of reorganization. The plan provided that Lake Ridge would give the property to Nationsbank, following its valuation by the bankruptcy court, in satisfaction of its secured claim. The plan then proposed that the resulting deficiency would be paid by the general partners and guarantors according to either (1) their individual settlements with Nationsbank or (2) the outcome of state court litigation among the parties.

The plan proposed six classes of creditors, ranked in order of priority. The order of preference was as follows: (1) Virginia Beach real estate tax claim; (2) Nationsbank's secured claim (to be satisfied in full following valuation by bankruptcy court and transfer of property from Lake Ridge); (3) Nationsbank's unsecured claim (following valuation, partners and guarantors will pay deficiency); (4) general unsecured creditors (who were owed $25,000, to be paid by Lake Ridge guarantors and general partners after Nationsbank's unsecured claim is paid); (5) in-

---

**1.** There are two companion cases in this proceeding, 2:94cv223 and 2:94cv328. While this court previously decided against consolidation, the court concludes that consolidation is proper and that the cases should be joined under one number. Accordingly, in this opinion, the court will address all issues on appeal in both cases.

**2.** There is some confusion as to the status of this issue on appeal. While both parties extensively briefed the issue, Lake Ridge indicated that it may be moot as a result of Lake Ridge's June 15, 1994 motion filed in Bankruptcy Court seeking

dismissal of its Bankruptcy Petition. Lake Ridge noted, however, that Nationsbank has 20 days from the date of that motion to file an opposition, and that such opposition is anticipated. As a result, Lake Ridge also suggested that the February 1, 1994 Order may not be moot.

Given the uncertain status of Lake Ridge's motion to dismiss and this court's goal of expeditiously resolving this litigation, the court will rule on the bankruptcy court's decision to lift the automatic stay.

sider claim of general partner R.J. Moore; and (6) the partnership interests.

On November 24, 1993, Nationsbank filed a motion for relief from the stay. On February 1, 1994, the bankruptcy court granted Nationsbank's motion and lifted the automatic stay, but subsequently agreed pursuant to Rule 8005 of the Bankruptcy Code to impose a stay pending appeal. This court subsequently lifted the stay, finding that such relief was unwarranted given the unlikelihood that Lake Ridge would prevail on appeal. A two-to-one majority panel on the Fourth Circuit Court of Appeals affirmed this court's lifting of the stay.

On February 8, 1994, following a valuation hearing involving the expert testimony offered by both sides, the bankruptcy court followed Lake Ridge's appraisal and determined that the property value was $21,900,000 (and not $11,561,000 as argued by Nationsbank).

On April 19, 1994, the bank proceeded with foreclosure and purchased the property for $10,000,000. On June 15, 1994, Lake Ridge filed a motion to dismiss its petition with the bankruptcy court. This latter motion has not been ruled upon by the bankruptcy court and will apparently be opposed by Nationsbank.

### III. STANDARD OF REVIEW

When a district court reviews the bankruptcy court's decisions of law, the review is *de novo*. When the district court reviews the bankruptcy court's findings of fact, the review is under an abuse of discretion standard. *In re Morris Communications*, 914 F.2d 458, 467 (4th Cir.1990); *Grundy Nat'l Bank v. Tandem Mining Corp.*, 754 F.2d 1436 (4th Cir.1985).

### IV. DISCUSSION

**A. Did the bankruptcy court err in lifting the stay pursuant to § 362(d)(2)?**

Lake Ridge's central issue on appeal is whether the bankruptcy court erred in lifting the stay pursuant to section 362(d)(2). Specifically, Lake Ridge challenges the bankruptcy court's conclusion that Lake Ridge's sole asset (the property) was not necessary for an effective reorganization since Lake

Ridge intended to liquidate the property and go out of business.

**1. Section 362(d)(2) generally**

Pursuant to section 362(d)(2), the court *shall* grant relief:

> with respect to a stay of an act against property ... if
>
> (A) the debtor does not have equity in property; and
>
> (B) **such property is not necessary to an effective reorganization.**

11 U.S.C. 362(d)(2) (1993 and 1994 Supp.) (emphasis added). The party seeking relief (Nationsbank) has the burden of proof on the issue of the debtor's equity in the property and the party opposing relief (Lake Ridge) has the burden of proof on all other issues. 11 U.S.C. 362(g). Since all parties agree that Lake Ridge had no equity in the property, the focus of the inquiry is whether Lake Ridge can establish that the property in question is necessary to an effective reorganization.

When determining whether the property in question is necessary to an effective reorganization, the debtor must show that it has a "reasonable possibility of a successful reorganization within a reasonable time." *United States Ass'n v. Timbers of Inwood Forest*, 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1987). The fact that a debtor intends to liquidate the property does not necessarily preclude the debtor from offering a valid reorganization plan, although its burden appears to be more difficult in showing the plan is confirmable. *See In re Koopman's*, 22 B.R. 395, 407 (Bankr.D.Utah 1982) (court addresses the kind of limited scenario where a liquidation plan would be considered confirmable, such as when "the property may be important to the liquidation of other property, as for example a warehouse or refrigerator which, although overencumbered, may be needed to store inventory or groceries pending sale ... [W]hen sold as a package, [the property] may bring a better price for other assets ..."). *Matter of Sandy Ridge Development Corp.*, 881 F.2d 1346, 1354, n. 19 (5th Cir.1989).

In *In re 6200 Ridge, Inc.,* 69 Bankr. 837, 843–44 (Bankr.E.D.Pa.1987), a case upon which Nationsbank heavily relies, the court concluded that the single asset debtor with no ongoing business could not come forward with a valid reorganization plan for purposes of § 362(d)(2). The debtor in that case was a corporation which owned a strip shopping mall. The corporation's owner had recently died and the corporation's primary creditor became the mortgagee-in-possession prior to the filing of the petition in bankruptcy. Upon motion by the creditor, the bankruptcy court lifted the automatic stay pursuant to section 362(d)(2), noting that the debtor had no equity in the property, was not actively engaged in business, had no intention of resuming the business, and would not be responsible for any deficiency suffered by the creditor. *Id.; accord In re Monica Road Associates,* 147 B.R. 385 (Bankr.E.D.Va. 1992) (bankruptcy court follows *6200 Ridge,* noting the debtor "is a single asset real estate partnership that owns nothing but undeveloped land that is generating expenses but no income. The debtor does not conduct any business and is not proposing in its plan to reorganize [but instead proposes to turn the property over to the bank] ...").

### 2. The Bankruptcy Court's decision

In granting Nationsbank's motion for relief from the automatic stay, and concluding that Lake Ridge's plan of reorganization was unconfirmable, the bankruptcy court focused on the fact that Lake Ridge:

(1) owns a single asset, which is raw land;

(2) has no equity in the property

(3) proposes a plan of liquidation, rather than reorganization; and

(4) has no ongoing business.

*See* January 28, 1994 Opinion. 163 B.R. 284. The bankruptcy court concluded that Lake Ridge's plan did not fit within the goals of a chapter 11 reorganization plan, and therefore lifted the automatic stay.

As previously stated, Lake Ridge concedes that it has no equity in the property and therefore the focus of the inquiry must be on whether the bankruptcy court erred in concluding that the "property is not necessary to an effective reorganization." 11 U.S.C. 362(d)(2)(B). Lake Ridge asserts that the property is the "linchpin" of its plan and therefore is necessary for an "effective reorganization." Noting that the bankruptcy court has already valued the property (part of its plan), it argues that the remaining elements of the plan (payment of unsecured balance by guarantors and partners) will follow, enabling Nationsbank to recover its debt.

The court finds no error with the bankruptcy court's decision to lift the stay and follows the reasoning of the bankruptcy court in support of this conclusion. Much like the debtors in *6200 Ridge* and *Monica Roads,* Lake Ridge is incapable of offering a realistic plan of reorganization. While Lake Ridge maintains that Nationsbank would benefit from the implementation of its plan, the fact that Nationsbank so strongly opposes the plan suggests otherwise. Moreover, it appears that the plan imposes no greater obligations on the guarantors or partners than those that already exist.[3] It seems as if the only beneficiaries of the plan would be the Lake Ridge guarantors and partners, who would benefit from a favorable valuation as set forth in the plan. While Lake Ridge's concern for its guarantors and partners is understandable, their interests may be protected by pursuing state law remedies and should not serve as the basis for protracting this litigation. *See In re Humble Place Joint Venture,* 936 F.2d 814, 818 (5th Cir.1991) (economic fate of partners irrelevant to debtor's bankruptcy).

For the above stated reasons, the decision of the bankruptcy court to lift the automatic stay is AFFIRMED.[4]

---

3. There is no concrete evidence in the record that the guarantors and partners have agreed as part of the plan to assume any greater responsibility than that already imposed upon them by virtue of their individual agreements with Nationsbank.

4. Lake Ridge also asserted that the bankruptcy court impermissibly applied a *per se* rule that a single asset debtor in Lake Ridge's position has no place in Chapter 11. The bankruptcy court committed no such error and quite explicitly rejected any such *per se* proposition: "Some courts hold that no Chapter 11 case may exist

**B. Did the bankruptcy court err by conducting a valuation hearing after having lifted the stay?**

After having granted Nationsbank's motion to lift the stay pursuant to § 362(d)(2), the bankruptcy court, over the objection of Nationsbank, proceeded to conduct a valuation hearing on the property. Nationsbank contends that the valuation hearing served no legitimate purpose and therefore should not have been held.

**1. Section 506(a) generally**

Section 506(a) of the Bankruptcy Code provides for a valuation hearing of the debtor's property. According to that section, "Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a).

■■■ Section 506 clearly directs a court to have some valid bankruptcy purpose before conducting a valuation hearing. Such valid purposes include "a redemption proceeding under § 722, granting relief from the automatic stay under § 362, determination of eligibility for Chapter 13, sale of assets of the bankruptcy estate under § 363, or plan of confirmation under § 1129 or § 1325." *In re Richardson,* 97 B.R. 161 (Bankr.W.D.N.Y. 1989).

The case of *In re Mesa Business Park Partnership,* 127 B.R. 144 (Bankr.W.D.Tex. 1991), is remarkably similar to the case at hand. In *Mesa,* a single asset debtor, with no equity in the property and no intention of reorganization, requested a § 506(a) valuation hearing despite the fact that the property had already been sold at a foreclosure sale to the primary creditor, which bought the property at a price well below the appraisal price listed by the creditor. The debtor argued that it was entitled to a section 506(a) valuation hearing so as to prevent the creditor from using the foreclosure sale price (as opposed to a fair valuation price) as a credit towards its debt. The creditor disagreed,

contending that the valuation hearing would serve no legitimate bankruptcy purpose and that the only reason the debtor wanted a valuation hearing was to protect its partners, who guaranteed the debtor's loans, and who hoped that a valuation hearing would set a much higher credit against the underlying debt.

The *Mesa* bankruptcy court agreed with the creditor and refused to conduct a valuation hearing. The court concluded that "section 506(a) valuation requires some context in order for the procedure to be invoked, and the lack of such a bankruptcy related context would deprive the bankruptcy court of the jurisdiction to even make what would be essentially an advisory decision." *Id.* at 147. Noting that the debtor had no more assets, and therefore would be unable to pay any deficiency, the court concluded that a valuation hearing would serve no legitimate purpose. *Id.; accord In re Turnbow,* 121 B.R. 11 (Bankr.S.D.Tex.1990) (because no viable plan of reorganization, court has no need to conduct valuation hearing, since it would only serve as an advisory opinion); *In re Richardson,* 97 B.R. 161 (Bankr.W.D.N.Y.1989) (leading case for the proposition that where no valid purpose articulated for valuation hearing, one will not be conducted).

■■■ Lake Ridge attempts to distinguish the aforementioned cases and offers two reasons justifying the valuation hearing. First, it claims that, unlike the debtor in *Mesa,* Lake Ridge had a viable plan of reorganization, a critical component of which was the need for valuation. Second, Lake Ridge asserts that section 506(a) requires the court to set the amount of the unsecured claims, which is precisely what the bankruptcy court did in assessing value.

The flaw with Lake Ridge's first argument is that its plan has been rejected by both the bankruptcy court and this court. While valuation may have been a component of its plan, the need for the valuation disintegrated when both courts determined that Lake Ridge's plan was unconfirmable. To suggest that the need for valuation may survive the death of

where the debtor has but a single asset. **This is a narrow, myopic view."** Opinion at 3 (emphasis added). While the bankruptcy court ultimate-

ly concluded that the stay should be lifted, it reached this conclusion after carefully reviewing the facts of the case.

the plan, is to misconstrue the goals of the Bankruptcy Act and frustrate the efforts at efficiently resolving this case.

Lake Ridge's second argument in support of the valuation hearing is equally flawed. Lake Ridge contends that the bankruptcy court needed to set the amount of the remaining unsecured claims. This same argument was rejected by the *Mesa* court:

> In this case, the debtor has no need to set the deficiency claim of Fidelity against the estate. The debtor gave no indication at the hearing that it had any other assets available for distribution to creditors, so determining allowed unsecured claims makes no more sense here than it would in a no-asset chapter seven liquidation case.

*Id.* at 148. As in the *Mesa* case, Lake Ridge has no other assets and admits its debt far exceeds the value of the property. Calculating the valuation of the property merely to quantify the remaining unsecured claims would be an exercise in futility, given Lake Ridge's inability to repay the claims and its intention to dissolve itself once this case is over.

 On a related point, Lake Ridge argues that a determination as to the unsecured claims is necessary since it argues that Lake Ridge partners and guarantors have promised to repay the excess deficiency. This argument is equally flawed. As previously mentioned, the focus of these proceedings is on the debtor, Lake Ridge, and not on the partners and guarantors who may face liability on the deficiency. Moreover, these additional parties have available state law remedies which can be employed to obtain the proper credit on the underlying debt. This court finds no authority for the proposition that bankruptcy proceedings may be expanded and delayed so as to resolve tangential matters.

The court therefore concludes that the valuation hearing served no legitimate purpose. Accordingly, the valuation determination is REVERSED.[5]

---

5. Had this court ruled that the valuation hearing was properly conducted, it would not have concluded that the bankruptcy court's determination was clearly erroneous, as argued by Nations-

## V. CONCLUSION

For the aforementioned reasons, the decision of the bankruptcy court is AFFIRMED IN PART AND REVERSED IN PART. The bankruptcy court's order lifting the automatic stay pursuant to § 362(d)(2) is AFFIRMED. The decision of the bankruptcy court with regard to the valuation hearing is REVERSED.

bank. Given the conflicting expert testimony on the value of the property, the bankruptcy court's decision to favor one expert over the other would not have been an abuse of discretion.