**In re Donna KIERSZ, Debtor.**

No. 04–10307 K.

United States Bankruptcy Court,
W.D. New York.

May 21, 2004.

**146**

Paul M. Pochepan, Buffalo, NY, for Debtor.

MICHAEL J. KAPLAN, Bankruptcy Judge.

May a trustee in case "A" perform a task that is necessary to the estate in case "B," when estate "A" could not benefit from that act? Would payment to estate "A" in exchange for the act make a difference? Specifically, may a trustee of an estate that owns a whole life policy assist the trustee of the estate of the beneficiary of the policy to get policy value only for the creditors of the beneficiary? What if there are reciprocal policies such that each estate will benefit from the act of the "other" trustee, if they cooperate? It is this last situation that is now before the Court, and the Court rules that the Trustees may *not* collaborate to that extent,

because "control" of the policy is surrendered only in a *joint* case in which every interest in the policy has merged.

### BACKGROUND

In the case of *In re Trautman*, 296 B.R. 651 (Bankr.W.D.N.Y.2003), my colleague, Hon. Carl L. Bucki, examined the cases from this district (including a decision of the United States District Court of this district) addressing the exemptibility or non-exemptibility of reciprocal life insurance policies under New York Insurance Law § 3212. Judge Bucki concluded as to reciprocal policies between a mother and daughter, each of whom was a debtor in separate contemporaneous Chapter 7 cases, that where each of the debtors was the owner of the policy on her own life, each owner could exempt the policy from property of her own bankruptcy estate pursuant to Insurance Law § 3212(b)(1). He further concluded that "while the Bankruptcy Rules expressly allow the joint administration of the estates of a husband and wife, no authority is granted for the administration of the estates of a parent and child who are not otherwise in partnership with each other.... When the estates of owner and beneficiary are separated, the rights of the revocable beneficiary are too ephemeral to constitute property of the bankruptcy estate within the means of 11 U.S.C. § 541(a), unless this expectancy matures into a death benefit within 180 days."

The cases presently at bar are separate petitions filed by husband and wife, rather than mother and daughter. There are "reciprocal" life insurance policies that are not exempt as to creditors of each beneficiary. In one case, there is one policy, owned by the husband on his own life, naming his wife the beneficiary. In the other case the reverse is found as to a different policy. This case is not governed

by earlier cases (including a binding slip opinion of the U.S. District Court of this district) permitting the trustee in a *joint* case involving reciprocal life insurance policies to obtain their value, just as the husband and wife themselves could do, where ownership was not consistent with total exemption under Insurance Law § 3212(b)(2). Rather, the Trustees argue that the underpinnings of the cases involving reciprocal policies in *joint* cases apply with equal force when each spouse owns a policy on the life of the other spouse, in *separate* cases. The Trustees argue that the creditors of each beneficiary should enjoy the value of the policy that is not exempt as to them.

For reasons slightly different than those which led Judge Bucki to the holding in *Trautman,* this writer agrees with the outcome of the *Trautman* decision, and extends it to the cases at bar even though the *Trautman* debtors were mother and daughter, and those here now are separate cases of husband and wife.

In *Trautman,* the Court focused on the absence of authority for the joint administration of two estates in cases that are separate cases. Because this writer believes that Bankruptcy Courts do, in fact, encounter cases in which it is proper to expect and empower collaborative administration of two or more bankruptcy estates by the same or different trustees,[1] this writer believes that a different principle dictates the result.

Specifically, this writer has often held that the powers that are otherwise

available to a bankruptcy trustee under the Code ought not to be permitted to be employed when there is no legitimate "bankruptcy purpose" served thereby in the case in which the Trustee serves *qua* trustee. For example, in unpublished decisions, this writer refused to permit a trustee to "sell all of the debtor's right, title and interest" in a debtor's over-encumbered homestead, where the purchaser was a foreclosing mortgagee who sought to extinguish the debtor's homestead exemption. Even though the trustee could get money for "all of the *debtor's* right, title and interest;" he could only sell *"subject"* to the debtor's available claim of homestead exemption; and the *equitable* rights attendant to the exemption could not be extinguished by giving the debtor $10,000 cash. (See footnote 3 below.)

In a case in which the estate had absolutely no monetary interest in a certain lawsuit, but in which the debtor was the titular plaintiff (with no equitable or beneficial interest), this Court stated that "just because the Trustee has succeeded to the debtor's right to something, does not mean that it is always proper for the Bankruptcy Code to be utilized to sell those rights, to the extinguishment of the rights of innocent third parties." (In that case, the true benefit of pursuing the suit was in favor of the debtor's non-debtor spouse, who had guaranteed certain debts related to the lawsuit.)

And recently this writer ruled that a trustee may not sell "all of the debtor's right, title and interest" in land, where some of that interest was acquired by the

---

1. Some cases come to the ready recollection of this writer: e.g. four trustees worked collaboratively in a number of related cases involving swimming pool manufacturers and financiers; two trustees worked collaboratively in separate cases of husband and his estranged wife with regard to jointly owned non-exempt property; separate trustees worked collabora- tively in the cases of a disbarred attorney and a corporation which he used in an illegal activity; two trustees worked collaboratively in the cases of a chain of craft stores that were often confused with a chain of sister stores that dealt with lawn, garden and nursery supplies, and which had a similar name.

debtor post-petition, with post-petition funds; it was worth it to someone looking to confound the debtor's title, that they were willing to pay the trustee for something he could not convey, as a matter of law, but that would "sound good" on paper—"all of the debtor's right, title and interest."

Thus the key question, to this writer, is not whether the cases are a single joint case or two or more separate cases, but rather this: If the participation of two trustees is required to obtain a benefit to one estate (for example, to sign a document to obtain the cash surrender value of a life insurance policy for the benefit of a different bankruptcy estate), would it be proper for the trustee to do so in the case that would not benefit? Would there be a legitimate "bankruptcy purpose" served thereby in the estate that would not benefit? I would answer that question in the negative.

▮▮▮ Now the next question. It is beyond doubt that Insurance Law § 3212 does not provide an exemption for the cash *proceeds* of a life insurance policy on which a judgment debtor is merely the beneficiary; cash-in-hand is not exempt merely because it came from a life insurance policy, and § 3212 is utterly devoid of language addressing the rights of creditors of a "mere" beneficiary.[2] So let us hypothesize a case in which the beneficiary is not a debtor in a bankruptcy proceeding at all, but is indeed a *judgment* debtor. And presume the pendency of a Chapter 7 bankruptcy case concerning the *owner/insured* of the policy upon which the non-debtor is the beneficiary, and that the

policy has substantial cash value. And presume, finally, that the owner/insured had reserved, in the policy, the right to change beneficiary, to assign the policy, or to obtain the cash value of the policy. We know that the trustee has *apparent power* to obtain the cash value, but we also know under Insurance Law § 3212(b)(1) that *he may not exercise the power* because the policy is *exempt as against the creditors of the owner/insured.* The Court, if asked, would stop the trustee. Does this result change if a judgment creditor of the non-debtor beneficiary is willing to *pay* the Chapter 7 estate of the owner/insured some money in exchange for the trustee's signature on a document that would surrender the policy and pay its cash value *to the non-debtor/beneficiary/judgment debtor, so that the judgment creditor may enforce the judgment against the funds once they reach the beneficiary's hands?*

Getting some money into the Chapter 7 estate might seem to be "bankruptcy purpose" enough. But, as in the case of the proposed sale of a debtor's equitable claims to a homestead, or the proposed sale of a lawsuit that is really post-petition property of the debtor or that is property of the debtor's non-debtor spouse, the mere fact that someone is willing to pay the estate some money does not mean that it is the trustee's to sell; such facts do not justify the use of the powers of the Bankruptcy Code to prejudice the rights of innocent third parties, or to prejudice the debtor's post-petition assets, or to prejudice a debtor's equitable defenses in a foreclosure action against the exempt homestead?[3]

---

2. The term "mere beneficiary" is used here to connote a beneficiary who does not own the policy insuring someone else's life, while the insured is still living, and who does not have other control over the policy. See the text accompanying footnote 8 below.

3. The specific fact pattern in mind as to the last item is this real case: A debtor owned a home with considerable land in Montauk, NY; extremely valuable land. It all was one parcel, in foreclosure court. The mortgage lender wanted all the land on the auction block.

■ Indeed, this should be beyond doubt. All of a trustee's acts "must relate to *administering property in the custody of the court or to bringing property into such custody* so that it may there be administered. This situation, as an officer of the court administering property in the custody of the court, is the woof into which all of [a trustee's] status, duties and powers are woven." *Imperial Assurance Company v. Livingston*, 49 F.2d 745 (8th Cir.1931).

■ There is a marked difference between administering "property of the estate" on the one hand, and selling the trustee's signature to confound adverse claims, on the other. A trustee has no license to extort or racketeer or to engage in champerty. Bankruptcy Court is not a "netherworld" in which "anything goes," and in which there is never such a thing as a deal too "dirty" to accept.

■ A trustee may not "sell" his or her ostensible "power" to simply cause trouble for others in aid of some private interest. (None of this is involved here, but this *reasoning* is instructive.)

Even the Bankruptcy Court itself would range beyond the scope of its permissible jurisdiction (11 U.S.C. § 105 *included*) were it to engage in such activities as making a valuation of property that has left the jurisdiction of the Court and that bears no relationship to confirmation of a plan or allowance of claim,[4] or administering property that is owned by non-debtor entities which are owned by other non-debtor entities which, in turn, are owned by a debtor.[5] (Clearly, such is not happening here.)

■ Here the bankruptcy estate of each *beneficiary* would be enhanced if the trustee of the insured/owner's bankruptcy estate would execute and deliver whatever is necessary to permit the recovery of the value of each policy. Does that render it valid and proper for the trustee of each owner/insured's estate to take action that will accomplish the other trustee's purpose? The Court answers this question in the negative.

### DISCUSSION

As to the value of a life insurance policy Insurance Law § 3212 states that:

> the term "proceeds and avails," in reference to policies of life insurance, includes death benefits, accelerated payments of the death benefit or accelerated payment of a special surrender value, cash surrender and loan values, premiums waived, and divi-

---

The debtor sought a ruling from the foreclosure court that would partition the land and sell only so much as was needed to satisfy the debt. When the debtor landed in Chapter 7 (I do not recall whether it was voluntary or involuntary), the lender offered the Trustee several thousand dollars for "all of the Debtor's right, title and interest," in the land. Sitting as a visiting judge on Long Island, this writer refused to confirm any sale that was not "subject to" the debtor's ability to argue his equitable defenses; merely handing the debtor his $10,000 exemption in cash did not suffice. The equitable arguments available to the debtor as to his homestead were not "property of the estate" that the Trustee could sell, this writer ruled. That is still the correct result. (If there were non-exempt equity in the property, and the trustee were to administer the property, the equitable arguments regarding partition would be heard by the Bankruptcy Court, and in an appropriate case the homestead exemption would be extinguished merely by paying the $10,000 to the debtor.)

4. See, for example, *In re Lake Ridge Associates*, 169 B.R. 576 (E.D.Va.1994), and *Richardson*, 97 B.R. 161 (Bankr.W.D.N.Y.1989) (citing other cases).

5. See *In re Murchison*, 54 B.R. 721 (Bankr. N.D.Tex.1985).

dends, whether used in reduction of premiums or in whatever manner used or applied, except where the debtors has, after issuance of the policy, elected to receive the dividends in cash.

Then § 3212(b)(1) states:

if a policy of insurance has been or shall be effected by any person on his own life in favor of a third person beneficiary, or made payable otherwise to a third person, such third person shall be entitled to the *proceeds and avails* of such property as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person effecting the insurance. [Emphasis added.]

This provision defies understanding if, as is usually the case, the beneficiary has no right to cash in the policy until the death of the insured. Perhaps anything that a judgment creditor of the beneficiary (or that the trustee of the beneficiary) might be willing to pay to the Chapter 7 estate of the owner/insured must be viewed to be "proceeds and avails" of the policy itself. If so, then it is completely clear that there can be no "bankruptcy purpose" in the trustee selling his or her signature because that money cannot belong to the bankruptcy estate of the owner/insured in any event.

■ Apart from this difficult question, the only exemption that Insurance Law § 3212 gives to a *beneficiary* as against *his or her* **own** creditors, trustees in bankruptcy and receivers in state and federal

courts, is if the beneficiary is the spouse of the insured, *and* is the owner of the policy. This is why a "bankruptcy purpose" is served when the trustee in a joint case "does what the husband and wife themselves could do" for the benefit of the creditors of each of them *qua* "beneficiary." In such event there is no exemption barrier to, and a legitimate bankruptcy purpose is served in *each* estate by, administering the policies.

In the bankruptcy case of any one individual (and no simultaneous or proximate filing by the beneficiary)[6], it cannot be doubted that the bankruptcy trustee cannot administer the policy for the benefit of the owner/insured's creditors if that individual debtor is the owner/insured (§ 3212(b)(1)). That being so, the owner/insured is not deprived of the right to control the policy when he or she files a voluntary Chapter 7 case. Putting aside issues of "good faith filing," "substantial abuse," or fraud, he or she could cash it in the next day after filing a Chapter 7 petition.[7]

A husband and wife living together are not likely to file separate cases in different jurisdictions at more-or-less the same time. It could happen in good faith, in an emergency, but it is not a likely occurrence. Rather, the decision to file the spouses separately occurs in the same jurisdiction; and in a single venue, it is not possible to file separate cases "at the same time."

It is only if all the necessary interests in the policy (all the interests necessary to

---

6. For a reason to be discussed later, we may not ignore the possibility that the beneficiary has filed under Chapter 7 in a different District.

7. Consider this hypothetical. I am insolvent. I own a valuable policy on my own life, but I have substantial unsecured debt. My child

needs an emergency operation that is a life or death matter. I could file Chapter 7 today and cash in the policy tomorrow, if necessary, to pay for the operation. New York exemption law seems to uphold that result, and no one of good conscience would suggest that the filing was a "bad faith" filing.

turn it into cash) merge in the same trustee at the same time that the trustee may act for all those interests. Otherwise, the trustee of the owner/insured is seeking to oust the debtor/owner/insured from a right the debtor never lost—the right to control the policy.

An exception might be presented if the beneficiary has more than the usual rights, such as a right to change the beneficiary, or if the policy is to secure a debt owed to the beneficiary, etc.[8] The Court expresses no opinion today as to such circumstances.

But in the ordinary case, the *Trautman* result is the correct result as to separate cases for mother and daughter, and it is the correct result for separate cases as to husband and wife.

## CONCLUSION

The Bankruptcy Code is susceptible of a disparity of results in joint, as opposed to separate, cases. This is particularly true given that only a "husband and wife" may file jointly, and given that an involuntary petition may be filed only against one person in each involuntary petition, even if several persons owe the same debt, for example, where a slip and fall occurred (such as multiple owners of a house, for example.). Separate cases of husband and wife have a result different from a joint case, so far as the value of life insurance is involved.

The Trustee's Objection to Claim of exemption is denied as moot; he could not realize upon the policy even if exemption were to be denied.

SO ORDERED.

---

**8.** See, for example, 71 N.Y.Jur.2d, Insurance § 2091 regarding rights of an "irrevocable beneficiary," etc.